IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1999 SESSION



FILED

June 25, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 02C01-9801-CR-00020 |
| | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable James Beasley, Jr., Judge |
| | ) | |
| TERRY A. McGEE, | ) | (Voluntary manslaughter) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Leslie Ballin
200 Jefferson Avenue
Memphis, TN 38103
(AT TRIAL)


Brett B. Stein
236 Adams Avenue
Memphis, TN 38102
(ON APPEAL)

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
        and
Douglas D. Himes
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493


William L. Gibbons
District Attorney General
        and
Dawn Doran
Chris Marshburn
Assistant District Attorneys General
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

# O P I N I O N

The defendant, Terry A. McGee, appeals as of right following his conviction by a jury in the Shelby County Criminal Court for voluntary manslaughter, a Class C felony. The defendant was sentenced as a Range I, standard offender to six years confinement to be served in the custody of the workhouse and was fined ten thousand dollars. The defendant presents the following issues for our review:

> (1) whether the trial court erred by denying the motion to suppress his oral statement, written confession, and the gun used in the shooting;
>
> (2) whether the trial court erred by allowing testimony from the victim's mother regarding the names of the victim's two sons and the fact that the defendant never contacted her after the shooting; and
>
> (3) whether the trial court erred in sentencing.

We affirm the judgment of conviction.

The defendant was originally indicted for the first degree murder of his girlfriend, Jacqueline Simms. The defendant admitted shooting the victim at the home they shared, but he claimed that the shooting was accidental. The defendant contended that the victim threatened him verbally and with a gun. He said that he went to his car to retrieve his rifle and as he was walking toward the house, he tripped. He said that the rifle discharged, and the bullet went through a glass door and hit the victim in the hip.

An investigating officer testified that the tree near the point where the defendant said he tripped was twenty-six feet from the doorway. The pathologist who performed the autopsy on the victim testified that the victim bled to death. He said that he found powder burns around the bullet wound which meant that the gun was fired within three feet of the victim. The jury convicted the defendant of voluntary manslaughter.

2

## I. MOTION TO SUPPRESS

The defendant contends that the trial court erred by failing to suppress (1) statements he made at the scene of the shooting, (2) his written confession, and (3) the gun used in the shooting that an officer retrieved from the trunk of the defendant's car. The state contends that the trial court properly denied the motion to suppress.

At the hearing on the motion to suppress, Officer Aaron Merritt of the Memphis Police Department testified that he responded to a shooting report on April 28, 1996. He testified that when he arrived at the scene, the victim was lying on the floor, and the defendant was comforting her. He said he picked up a pistol that was lying on the floor and handed it to his partner, who determined that it was fully loaded. He said he asked the defendant if another gun had been used in the shooting, and the defendant told him that the gun was in his car. He said that when he was unable to find the gun in the car, the defendant told him to get the keys from the ignition and look in the trunk. Officer Merritt said that after he recovered the gun from the trunk, he asked the defendant what had happened. He testified that the defendant told him that he came in late and got into an argument with the victim. He said the defendant told him that the victim got a gun and that he went to his car to get his gun. Officer Merritt stated that the defendant said that as he was going back toward the house, he tripped in the front yard, causing the gun to discharge.

On cross-examination, Officer Merritt testified that the defendant was not free to leave the scene. He stated that he did not advise the defendant of his Miranda rights before questioning him at the scene. He said he went outside to look for the gun in the defendant's car, and he told the defendant that he did not see the gun. He said the defendant told him to use the keys from the ignition to open the trunk. He said he never specifically asked the defendant for permission to search the trunk. He stated

3

that he filled out an arrest ticket at 5:40 a.m. which stated that the defendant was charged with first degree murder.

Sergeant Doug Swauncy, a homicide detective with the Memphis Police Department, testified that he took a statement from the defendant at about 5:22 p.m. on April 28. He said he first gave the defendant a rights form, and the defendant read the form and signed a waiver. He said he explained the form to the defendant to ensure that he understood it. He said that Sergeant McCommon also read the defendant his rights. He said the defendant put his initials on the statement after checking it for accuracy and signed it at the end. He said the statement was also read back to the defendant. He said he never promised leniency to the defendant in exchange for the statement.

On cross-examination, Sergeant Swauncy testified that the defendant had not been charged with anything at the time he made the statement and that the defendant was told that he had not been charged. He said he did not discuss with the defendant the possible charges. He admitted that the defendant's statement reflects that he told the defendant that he "may be charged" with murder. He said he did not explain to the defendant what he meant by "may be charged." He said he did not recall anyone telling the defendant that they would go easier on him if he gave a statement.

On redirect examination, Sergeant Swauncy testified that the defendant was not formally charged until a few days after he gave the statement. On recross-examination, he testified that one cannot be charged by an arrest ticket, even though the arrest ticket has charges on it. He said that according to the arrest ticket, the defendant was accused or charged with first degree murder.

4

The defendant's statement was admitted into evidence. In the statement, the defendant related that when he came home on April 28, his clothes were scattered throughout the home. He said the victim came out and threw clothes at him. He stated that the victim then left and came back with clothes in one hand and a gun in the other. He stated that the victim said, "You better not come back up in here. You just go where you came from." He said that as he started to get his clothes, the victim pointed the gun at him. He said he went to his car and got his gun, put in the clip, and cocked it. He said that as he started walking toward the house, he stumbled and the gun fired. He said he saw the glass door shatter. He said he put his gun in the trunk of his car and then looked inside and saw the victim lying on the floor. He said he went back outside and moved his car up the driveway, then he called 9-1-1 at the victim's request.

At the suppression hearing, the defendant testified that he never gave anyone permission to search his car. He stated that when he was in the police car, Officer Merritt told him he was charged with assault with a deadly weapon. He said he was told when he was being booked that the charge had been changed to first degree murder. He said that two days later, he was told that if he gave a statement, he might be charged with second degree murder or the charges might be dropped. He said he decided to give a statement to assist the police. He said the detectives gave him the impression that he had not been charged with first degree murder but that he would be if he did not give a statement. He said they explained to him that he was under arrest and that he might be charged with murder. He said that when he gave the statement, the detectives would ask a question and if they did not like the answer, they would change the question.

On cross-examination, the defendant stated that at the scene, he told Officer Merritt that the gun was in his car and that the keys were in the ignition. He said that because he was under stress, he did not ask the detectives to change his

5

statement to reflect that he might only be charged with second degree murder. He admitted that he said the statement was the result of his own free will and not of threats, promises or coercion. He said he did not think it was necessary to have his understanding of the charges in writing. He said that although the arrest ticket said first degree murder, he was not sure if he had been formally charged. He said he thought that he would be formally charged after he talked to the detectives. He admitted that when he talked to the detectives, they told him he might be charged with murder.

The trial court denied the motion to suppress. It concluded that the defendant was not in custody when he made statements at the scene of the crime, that the defendant's statement at the police station was voluntary and not the result of coercion, and that the defendant had consented to the search of his trunk.

Initially, we note that a trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

### A. ADMISSIBILITY OF ORAL STATEMENTS

First, the defendant contends that the trial court should have suppressed the statements he made to Officer Merritt at the scene of the shooting. He argues that he was in custody at the time and had not been provided with warnings as required by Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). The state contends that because the defendant was not in custody, Miranda warnings were not required.

6

Pursuant to <u>Miranda</u>, custodial interrogation entails "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Id.</u> Our supreme court has held that:

> the appropriate inquiry in determining whether an individual is "in custody" and entitled to <u>Miranda</u> warnings is whether, under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest. The test is objective from the viewpoint of the suspect, and the unarticulated, subjective view of law enforcement officials that the individual being questioned is or is not a suspect does not bear upon the question.

<u>State v. Anderson</u>, 937 S.W.2d 851, 855 (Tenn. 1996). In <u>Anderson</u>, the court also set forth several factors that, although not an exclusive list, are relevant to the objective analysis of whether a suspect is in custody. Those factors include the following:

> the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on the movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questioning or to end the interview.

<u>Id.</u>

Considering these factors, we conclude that the defendant in the present case was not in custody. When the defendant made the oral statements, he was in his own home, Officer Merritt merely asked him what happened, Officer Merritt was the only officer present, and the defendant was not restrained. <u>Miranda</u> must be strictly enforced, but only in those situations in which the concerns that motivated the decision are implicated. <u>Illinois v. Perkins</u>, 496 U.S. 294, 296, 110 S. Ct. 2394, 2397 (1990). Considering the totality of the circumstances in the present case, we hold that the defendant was not in custody. <u>See</u>, <u>e.g.</u>, <u>Braziel v. State</u>, 529 S.W.2d 501, 506 (Tenn.

7

Crim. App. 1975) ("general on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process, when the investigation has not progressed beyond general inquiry, is not forbidden and statements made in those circumstances are admissible."). Thus, Miranda warnings were not required, and the trial court properly admitted his statements.

## B. ADMISSIBILITY OF WRITTEN STATEMENT

Next, the defendant contends that his written statement made at the police station should have been suppressed because it was not voluntarily made. He argues that the statement was the product of police coercion because they told him that the charges would be reduced or dropped if he gave a statement and that he would be charged with first degree murder if he did not give a statement. The state contends that the trial court properly concluded that the statement was voluntary.

A defendant may waive his constitutional right to silence as long as the waiver is made "voluntarily, knowingly, and intelligently." State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992). In determining whether a defendant has waived his Miranda rights, courts must look at the totality of the circumstances. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997).

In the present case, nothing in the record reflects that the defendant was promised leniency in return for a statement. The fact that the defendant was told that he might be charged with murder did not render his statement involuntary, and no credible evidence supports the defendant's assertion that he believed his charges would be reduced or dropped if he gave a statement. The record shows that the defendant was apprised of his constitutional rights several times and that he agreed to waive those rights. In denying the motion to suppress, the trial court found that "the defendant knew exactly what he was doing and why he was doing it. He was not

8

coerced or induced to give this statement. The statement was given freely, voluntarily and knowingly . . . by the defendant . . . ." The record does not preponderate against this determination.

## C. ADMISSIBILITY OF WEAPON

The defendant contends that the trial court erred by not suppressing the gun Officer Merritt found in the defendant's car. He argues that he did not consent to the search. The state contends that the trial court properly admitted the evidence.

The analysis of any warrantless search must begin with the proposition that such searches are per se unreasonable under the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution, subject only to a few well-delineated exceptions. See Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967); State v. Tyler, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Before the fruits of a warrantless search are admissible as evidence, the state must establish by a preponderance of the evidence that the search falls into one of the narrowly drawn exceptions to the warrant requirement. State v. Shaw, 603 S.W.2d 741, 742 (Tenn. Crim. App. 1980). A warrant is not required when a defendant gives consent that is "unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992). The validity of the consent is a question that is determined by examining the facts. State v. Jackson, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993).

In the present case, the record shows that Officer Merritt asked the defendant if there was another gun, and the defendant responded that the gun was in his car. Officer Merritt testified that, "I went and looked in the car, just inside of the interior of the car, I didn't see it. And I made the statement that I didn't see a gun. He told me to get [the] ignition key and look in the trunk." Although Officer Merritt testified

9

that he did not specifically ask the defendant for permission to search the trunk, we believe that the defendant voluntarily consented to the search of his car, including his trunk, by telling Officer Merritt that the gun was in the car and by instructing the officer to get the key from the ignition and open the trunk to find the gun. The record does not preponderate against the trial court's finding that the defendant consented to the search. Thus, the search was proper.

## II. ADMISSIBILITY OF TESTIMONY FROM VICTIM'S MOTHER

The defendant contends that the trial court erred by allowing into evidence testimony from the victim's mother regarding the names of the victim's two sons and the fact that the defendant had not attempted to contact the victim's mother after the shooting. He argues that the evidence was irrelevant and prejudicial. The state contends that the evidence was admissible and that even if it was not, its admission was harmless.

According to Rule 401, Tenn. R. Evid., evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Tenn. R. Evid. 403. The trial court has discretion in determining whether evidence meets the test for relevancy. State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). Assessing the probative value and danger of unfair prejudice regarding the evidence also falls within the trial court's discretion. State v. Burlison, 868 S.W.2d 713, 720-21 (Tenn. Crim. App. 1993). This court will only reverse a trial court's decision if the trial court abused its discretion. State v. Williamson, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995).

10

First, the defendant challenges the admissibility of testimony from the victim's mother regarding the names of the victim's sons. The record reflects that during the direct examination of the victim's mother, Barbara Williams, the following colloquy occurred:

> PROSECUTOR: Did [the victim] have any children?
>
> MS. WILLIAMS: Two.
>
> PROSECUTOR: What were their names?
>
> . . . .
>
> MS. WILLIAMS: Antonio Germane Simms and Terrell Marcus Simms.

The record reflects that the defendant's attorney objected to the testimony, but the objection was overruled.

We agree with the defendant that the evidence is irrelevant in that it does not relate, in any fashion, to any fact of consequence to the trial. See Tenn. R. Evid. 401. In this respect, the trial court should not have admitted the evidence. We reach the same conclusion with respect to the testimony from the victim's mother that the defendant did not contact her after the shooting. The evidence is basically irrelevant. However, in reviewing all the evidence, we cannot conclude that the victim's mother's testimony "more probably than not affected" the result that the jury reached. T.R.A.P. 36(b); Tenn. R. Crim P. 52(a).

### III. SENTENCING

The defendant contends that the trial court erred in sentencing. He argues that although the trial court considered all relevant factors, the trial court erred by attributing more weight to the enhancement factors than to the mitigating factors. He also summarily argues that the trial court erred by denying alternative sentencing and by imposing a ten-thousand-dollar fine. The state argues that the defendant was properly sentenced.

11

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1995).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

The sentence to be imposed by the trial court for a Class C felony is presumptively the minimum in the range when there are no enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d) and (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

At the sentencing hearing, the victim's aunt testified that the victim's death was devastating to her family. Letters from the victim's family and friends requesting that the defendant receive the maximum sentence were admitted into evidence.

A presentence report was introduced into evidence. The report reflects that the then thirty-eight-year-old defendant dropped out of high school after the eleventh grade and was a co-owner of a landscaping business. It shows that he had previous misdemeanor convictions for a weapons offense in 1996, traffic offenses in 1994 and 1992, assault in 1990, three assault and batteries in 1988 and 1987, marijuana possession in 1985, and gambling in 1984.

The record reflects that the trial court applied the following enhancement factors, as listed in Tenn. Code Ann. § 40-35-114:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;

(10) The defendant had no hesitation about committing a crime when the risk to human life was high; [and]

(16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great[.]

The trial court gave great weight to factors (1) and (9) and moderate weight to factors (10) and (16).

The trial court found the following mitigating factors to be applicable, as listed in Tenn. Code Ann. § 40-35-113:

(2) The defendant acted under strong provocation; [and]

(13) Any other factor consistent with the purposes of this chapter.

With respect to factor (13), the trial court considered the fact that the defendant called 9-1-1 and had no prior felony convictions. The trial court stated that it gave little weight to the mitigating factors and imposed a six-year sentence.

First, we hold that the trial court erred by applying enhancement factors (10) and (16). These factors are inherent in a homicide when the victim is the only person present. See State v. Butler, 900 S.W.2d 305, 314, (Tenn. Crim. App. 1994); State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987). Nevertheless, we believe the record supports a six-year sentence. The remaining enhancement factors are entitled to substantial weight, particularly because four of the defendant's previous convictions are for assault or assault and battery, crimes of violence. The mitigating factors are entitled to very little weight. We conclude that a six-year sentence is supported by the record and is consistent with the purposes and principles of the Sentencing Act.

The defendant summarily contends that he should have received split confinement and that his fine was excessive, providing no specifics. A general claim that a sentence is incorrect avails the defendant nothing. Such summary assertions run

14

the risk of the sentence being summarily affirmed.  In any event, under our <u>de novo</u> review of the record, we conclude that both the sentence of straight confinement and the fine imposed are proper.  <u>See</u> Tenn. Code Ann. § 40-35-103.

In consideration of the foregoing and the record as a whole, we affirm the judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
Gary R. Wade, Presiding Judge


_____
Thomas T. Woodall, Judge