**STATE of Tennessee, Appellant,**

v.

**Jimmie Lee SHAW, Appellee.**

**No. 79–96–III.**

Court of Criminal Appeals of Tennessee.

June 10, 1980.

---

John C. Zimmermann, Asst. Atty. Gen., Nashville, David L. Raybin, Asst. Dist. Atty. Gen., Nashville, for appellant.

Robert M. Garfinkle and Dan Garfinkle, Nashville, for appellee.

## OPINION

DAUGHTREY, Judge.

In this appeal the State contests the trial court's pretrial order suppressing evidence of the search and seizure of a quantity of cocaine from the appellee–defendant's person and from his automobile. The trial judge held that the arresting officers' failure to secure a search warrant was in violation of the "exigent circumstances rule" of *Rippy v. State*, 550 S.W.2d 636, 640–41 (Tenn.1977).

■■ The import of this ruling is not entirely clear from the record, but the trial judge was apparently referring to the Tennessee Supreme Court's recognition in *Rippy* that the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution prohibit "unreasonable" searches and seizures. Our courts have held that warrantless searches and seizures are per se unreasonable, unless they fall into certain narrowly defined and carefully drawn exceptions, *i. e.* searches conducted incident to lawful arrest, those made by consent or in the "hot pursuit" of a fleeing criminal, those limited to a "stop and frisk" based on reasonable suspicion of criminal activity, and those based on probable cause in the presence of exigent circumstances.[1] *Coolidge v. New*

---

1. The case of *United States v. Nelson*, 459 F.2d 884 (6th Cir. 1972), cited in *Rippy*, is somewhat confusing in its analysis, in that it apparently uses the term "exigent circumstances" to mean "exceptions to the warrant requirements." Thus, taken literally, the *Nelson* and *Rippy* decisions would validate *all* automobile searches, a result which is clearly unsupported by existing constitutional law. *See, e. g., Chambers v. Maroney*, 399 U.S. 42, 47 -52, 90 S.Ct. 1975, 1979, 1981, 26 L.Ed.2d 419 (1970); *Coolidge v. New Hampshire*, 403 U.S. 443, 458–64, 91 S.Ct. 2022, 2033–2037, 29 L.Ed.2d 564 (1971). In addition, *Nelson* and *Rippy* lump the "plain

*Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Hawkins v. State*, 543 S.W.2d 606 (Tenn.Cr.App.1976). If the circumstances of a challenged search and seizure come within one of the recognized exceptions, the fruits of that search and seizure are not subject to operation of the exclusionary rule and may be properly admitted into evidence.

■ We conclude that under the facts in this case the seizure of cocaine as a result of the search of the defendant's person and his automobile was not unreasonable. The record shows that at 5:15 p. m. on April 11, 1978, Metro vice squad officers received information from a reliable informant [2] that the defendant, Shaw, would be leaving his home in Bellevue between 5:30 p. m. and 7:30 p. m. to deliver a quarter ounce of cocaine "around the Tennessee State University." The informant told police that Shaw would be driving a white automobile.

One of the vice squad officers knew Shaw and immediately set up a surveillance of his home. Other officers went to the interstate exit nearest the TSU campus. At some point between 5:30 and 7:30 p. m., Shaw left his home, went to another house, returned home and then left again in his automobile, a white Monte Carlo. This information was transmitted by radio to officers stationed near the interstate, and they soon observed the suspect exit the highway and drive toward TSU. Shaw drove along the edge of the campus and then turned into an alley where he stopped his car and got out, ostensibly to urinate. At this point he was approached by the vice squad officers, who identified themselves and frisked Shaw for weapons. In his right hand the defendant was clenching a vial and an alu-

minum foil packet, both of which contained a white powder.

Shaw was then placed under arrest. The officers immediately proceeded to search his automobile, in which they found another aluminum foil packet, a marijuana cigarette, and a loaded pistol. The official arrest report reflects that Shaw was placed under arrest at 7:40 p. m.

In the court below, defense counsel argued that the officers had time to get a search warrant and therefore should have done so. On cross–examination, however, one of the officers testified that securing a search warrant normally takes an hour and a half to two hours. Clearly there was not time to secure a warrant in the fifteen minute period between the officers' receipt of information (5:15 p. m.) and the earliest time the defendant was expected to make the delivery (5:30 p. m.).

■ As it turned out, the arrest was not made for another two hours. However, the reasonableness of the officers' action in effecting a warrantless search and seizure cannot be judged in hindsight, but must be viewed instead in light of the circumstances existing at the time the search was made. *See generally Cardwell v. Lewis*, 417 U.S. 583, 595–96, 94 S.Ct. 2464, 2472, 41 L.Ed.2d 325 (1974), in which a plurality of the court noted:

> Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where

view doctrine" in the same category as other exceptions to the search warrant requirement, when it is generally conceded that seizure of an object in "plain view" does not, by definition, involve a "search" and thus falls outside the Fourth Amendment's prohibition against "unreasonable searches." LaFave, *Search and Seizure* § 2.2(a) (1978). *See also City of Decatur v. Kushmer*, 43 Ill.2d 334, 253 N.W.2d 425, 428 (1969).

2. There was no challenge of the informant's reliability in the trial court. The proof was that he had given correct information to police on two prior occasions, one of which resulted in a drug conviction. His information was based on a personal conversation with the defendant on the same day he spoke to officers.

probable cause is unforeseeable and arises only at the time of arrest. . . . The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.

Clearly, prompt police action was called for when officers received information that a drug delivery might be made within the next 15 minutes. As one commentator has noted, "when the police set out for a particular place to search a vehicle they expect to find there, they need not detour to the magistrate if there is reason to believe that the delay could result in loss of the evidence sought . . . because the defendant is not in custody and may move the vehicle to another unknown location (footnote omitted)." LaFave, *Search and Seizure* § 7.2 at 521 (1978). Moreover, in this case the police *wisely deferred action until the defendant's presence near the TSU campus in a white car corroborated the information they had received from the informant.* At this point they clearly had probable cause to stop the defendant's automobile, and they were also faced with exigent circumstances, *i. e.* the fact that Shaw could make (or was already in the process of making) the expected cocaine delivery before they could secure a search warrant, and the fact that the vehicle could be moved at any time. See *United States v. Brennan*, 538 F.2d 711 (5th Cir. 1976) (no probable cause until airplane seen taxiing without lights, corroborating informant's information); *United States v. Kulp*, 365 F.Supp. 747 (E.D.Pa.1973) (no probable cause until informant's information corroborated in part by surveillance).

■ Where police have found it necessary to keep a suspect or his vehicle under surveillance and then intervene in order to prevent further movement of the vehicle, the courts have generally held that there is no obligation to secure a warrant during the interim. They reason that the police could not know in advance at precisely what point the surveillance would be fruitful, and therefore to say that there was time to obtain a warrant is based upon the advantage of hindsight. *See, e. g. United States v. Weinrich*, 586 F.2d 481, 492–94 (5th Cir. 1978), *cert. denied* 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979); *United States v. Sigal*, 500 F.2d 1118, 1122 (10th Cir. 1974); *State v. Arellano*, 110 Ariz. 434, 520 P.2d 306, 307–08 (1974); *State v. Tant*, 287 So.2d 458, 460–61 (La.1973). We note that the surveillance in this case was entirely reasonable, based on the informant's tip, and that it corroborated the information previously received by police officers. When the defendant alighted from his car in a dark alley in the vicinity where the cocaine delivery was expected to occur, prompt police action in stopping the defendant to prevent such activity and to preserve the status quo was also clearly reasonable.

■ At oral argument before this Court, defense counsel conceded the existence of probable cause on the officers' part sufficient to validate their "stop and frisk" of the defendant, but he argued that there were no "exigent circumstances" to justify the search of the car. His argument overlooks the fact that the very mobility of the vehicle supplied the requisite exigent circumstances to validate its warrantless search. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). As the United States Supreme Court has noted:

For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment. *Chambers v. Maroney, supra*, at 52, 90 S.Ct. at 1981.

We conclude that the search and seizure in this case did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. It follows that the evidence at issue should not have been suppressed.

The judgment of the trial court is reversed and the case is remanded for further proceedings.

DUNCAN and TATUM, JJ., concur.