IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 29, 2003 Session

## STATE OF TENNESSEE v. WOODROW GIFFORD, JR. and CARL MONK

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S44,264 and S44,265     Phyllis H. Miller, Judge**

**No. E2002-01233-CCA-R3-CD**
**October 13, 2003**

The Sullivan County grand jury indicted Defendant Woodrow Gifford, Jr. for possession of over 0.5 grams of cocaine, a Schedule II drug, and possession of drug paraphernalia, a Class A misdemeanor. The Sullivan County grand jury indicted Defendant Carl Monk for possession of over 26 grams of cocaine, a Schedule II drug, and possession of drug paraphernalia, a Class A misdemeanor. Following the trial court's denial of the Defendants Motions to Suppress evidence, the Defendants both pled <u>nolo contendere</u> to possession with intent to sell drugs, pursuant to Tennessee Code Annotated Section 39-17-417, and possession of drug paraphernalia, pursuant to Tennessee Code Annotated Section 39-17-425. Both Defendants reserved the right to appeal a certified question of law regarding the trial court's denial of their Motions to Suppress. Finding no error in the trial court's judgment, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Larry S. Weddington, Bristol, Tennessee, for the appellant, Woodrow Gifford, Jr., J. Wesley Edens, Bristol, Tennessee, for the appellant, Carl Monk.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and William Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

The following evidence was presented at the suppression hearing held on April 12, 2001.

Officer James Shores testified that on April 9, 2000, police officers of the Bristol Police Department responded to a call at the Regency Inn in Bristol, Tennessee. The manager of the Inn, Kathy Beeler, testified that due to a mistaken belief that the room was unoccupied, she entered the room rented to Woodrow Gifford, Jr., one of the Defendants. The manager testified that part of her duties include checking rooms after they are cleaned by housekeeping to ensure that the rooms are clean and ready to be rented. Upon entering the room, the manager stated that she saw a large lump in one of the beds. She testified that at first she thought the lump was a pillow that had been left by the cleaning staff so she did a more thorough inspection. What she found was a bag containing small bags of white power, coffee cups, a box that said "digital scales," and spoons. The manager explained that initially she thought that the items in the bag belonged to the individuals who rented the room the night before and that the bag contained coffee ingredients, cups, and creamer. The manager reported that she left the room intending to find out whose bag it was but, upon further reflection, thought it odd that the bag contained a digital scale. She stated that she began to suspect that the bag contained drugs and drug paraphernalia. The manager further testified that based on this suspicion, she returned to the room and tasted the white powder, which made her tongue go numb.

The manager testified that after she discovered the suspicious bags, she contacted the owner of the Inn who told her to notify the police, which she did. Officer Shores testified that he responded to the call and went to investigate. Officer Shores stated that after talking with the manager, he contacted his supervisor, Lieutenant Fred Overbay, who told him to set up surveillance of the room and to notify the narcotics and detective divisions. According to Officer Shores, Vice and Narcotics Unit Investigators John Byers and Matt Austin arrived at the Inn within thirty to forty-five minutes to investigate. At some point during the investigation, the room's electronic key code was changed which prevented re-entry to the room without a new electronic key. There is some inconsistent testimony as to who initiated the key code changes. Officer Shores stated that one of the officers requested the change but was unsure who made the request. There manager testified that it may have been the Inn's owner who changed the code when he arrived because of concern that the room contained drugs and drug paraphernalia.

Investigator Byers testified that he, Investigator Austin, and Officer Shores discussed the information provided by the Inn's manager and decided to gather information to obtain a search warrant to search the room. He testified that it was during this period that the Investigators noticed a van with two men approaching the room. Investigator Byers explained that the van and the men resembled the descriptions given by the manager. The Investigator stated that the Defendants, Woodrow Gifford, Jr. and Carl Monk, parked the van in front of the room under surveillance and attempted to enter it. Investigator Byers testified that upon discovering that the electronic key did not work, Defendant Gifford entered the Inn's front office and appeared to request and receive a new room key. Investigator Byers stated that Defendant Gifford returned to the room, both Defendants entered the room, and then exited it a few minutes later. He went on to testify that, when the Defendants exited the room, Defendant Gifford was carrying a bag matching the description given to the police by the Inn's manager. Investigator Byers reported that when the officers who had been surveilling the room saw the Defendants leaving the room with the bag, they approached the Defendants and identified themselves as police officers.

Investigator Byers testified that he and Investigator Austin said to the Defendants that they would like to talk with them and that it was at this time the Defendants started acting suspiciously by moving their hands around inside their coats and around the "waist area." The Investigator reported that he was alarmed by this behavior and directed the Defendants to show him their hands. He testified that in the process of doing so, Defendant Gifford put the bag on the ground and the contents in the bag were in his and Investigators Austin's plain view. Investigator Byers recounted that he and Investigator Austin saw small bags of a substance they believed to be cocaine, a coffee cup and a strainer, both with white powder residue. Investigator Byers testified that he asked Defendant Gifford for permission to open the bag and Defendant Gifford responded by nodding his head. He further testified that although he asked for permission to search the bag, he did not believe he needed the Defendant's consent because he had probable cause to search the bag based on what was in plain view. Investigator Byers stated that he and the other officers discussed testing the residue and that he left to get a field test kit. Investigator Byers explained that when he returned, the white residue on the coffee cup was tested and the tests confirmed that the substance was cocaine.

Officer Paul Ogletree testified that he arrived at the Inn while Detective Byers was interacting with Defendant Gifford, and that he, Officer Ogletree, assisted by watching Defendant Monk. Officer Ogletree stated that he performed an officer safety pat-down as he was trained to do and that he felt an unidentifiable object in Defendant Monk's jacket pocket. He testified that he asked Defendant Monk what it was and Defendant Monk responded that he did not know. He further testified that he asked if Defendant Monk would mind if he, Officer Ogletree, reached into the pocket and retrieved it to which Defendant Monk said no, he would not mind. Officer Ogletree stated that he removed a wadded up cigarette pack from Defendant Monk's pocket which he could tell was not empty. He reported that when he opened the pack he saw two small plastic bags containing a white powdery substance which he believed to be cocaine. Officer Ogletree stated that he asked Defendant Monk what the contents were and Defendant Monk said "Cocaine."

Officer Ogletree testified that at this time he performed a full search of Defendant Monk based on probable cause. He testified that while performing the search he found two more large baggies in Defendant Monk's inside jacket pocket which he believed to be cocaine as well as five pills in Defendant Monk's shirt pocket that test results established were dihydrocodone, a Schedule III controlled substance. Officer Ogletree reported that at this time, Defendant Monk was arrested, Mirandized, and taken into custody. Investigator Byers testified that later that day, while in custody, Defendant Monk signed a written statement in which he admitted to purchasing cocaine and pills from unknown individuals earlier that day.

Officer Ogletree testified that after he placed Defendant Monk under arrest and put him in the cruiser, he assisted in the arrest of Defendant Gifford. Officer Ogletree explained that he handcuffed Defendant Gifford and performed a full search. Officer Ogletree stated that while he was performing the search, he looked down at Defendant Gifford's feet and saw a baggie containing white powder laying on the ground between Defendant Gifford's feet. Officer Ogletree testified that it was at this time Defendant Gifford was arrested, Mirandized, and taken into custody. He

expressed to the officers that he felt it necessary to consult with an attorney and no statement, written or oral, was given.

On March 7, 2001, the Defendants filed separate Motions to Suppress evidence obtained by the Investigators from the Defendants when they were arrested and searched incident to their arrests on April 9, 2000. Defendant Monk's Motion to Suppress also included a motion to suppress the written confession he gave to Investigator Byers after being Mirandized. The trial court denied these Motions to Suppress and the Defendants entered nolo contendere pleas. Defendant Gifford entered nolo contendere pleas to the charges of possession with intent to sell or deliver over 0.5 grams of cocaine, and one count of possession of drug paraphernalia. Defendant Monk entered nolo contendere pleas to the charges of possession with intent to sell or deliver over 26 grams of cocaine, and one count of possession of drug paraphernalia. Upon entering these pleas, the Defendants reserved the right to appeal a certified question of law regarding the trial court's denial of the Motions to Suppress the evidence obtained by investigators from the Defendants at the time of their arrests as well as Defendant Monk's written confession. It is with regard to that reserved certified question of law that the Defendants now appeal.

## II. Analysis
### A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. Tennessee Rule of Criminal Procedure 37(b) provides, in pertinent part, that:

> An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction . . . upon a plea of guilty [if] . . . [the] Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case and the following requirements are met:
>
> (A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by the defendant for appellate review;
>
> (B) The question of law must be stated in the judgment or document so as to identify clearly  the scope and limits of the legal issue reserved;
>
> (C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and

(D) The judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

See State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). The record evinces that all of the mandatory requirements are clearly met, and the only issue is whether the certified question of law is dispositive of the case. We have stated that a dispositive issue is one where the appellate court "must either affirm the judgment or reverse and dismiss. A question is never dispositive when [the appellate court] might reverse and remand for trial . . . ." State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984).

The certified questions of law in this case as stated in the trial court's Order are whether the suppression of evidence was warranted based upon any of the following:

1.  The search was without a search warrant and in the absence of exigent circumstances.

2.  The property seized was not in "plain view," because the objects seized were not themselves in "plain view," and/or the police officers of the City of Bristol, Tennessee had no right to be in a position to so view, and/or the incriminating nature of the objects was not immediately apparent to the viewers.

3.  The search violated the reasonable expectation[s] of privacy of [the] Defendant[s].

4.  The search was conducted without probable cause because the information upon which the search was based was inadequate, and/or there is no nexus between the alleged criminality and the information, and/or there is no nexus between the information obtained and the place that was searched.

5.  The search[es] [were] the product of . . . illegal arrest[s], because the police officers of the City of Bristol, Tennessee had no authority to arrest Defendant[s], and/or the alleged offense was a misdemeanor not in the presence of the police officers of the City of Bristol, Tennessee, and/or the police officers of the City of Bristol, Tennessee had no arrest warrant.

6.  The search was illegal because it occurred prior to an arrest, and/or there was no custodial arrest, and/or the search occurred not [incident] to arrest.

7.      The search was without the consent of Defendant.[1]

Because the State's entire case is based upon the warrantless stop and frisk of the Defendants and a plain view search of the bag Defendant Gifford was carrying at the time of stop, if we find that the stop and frisk was unconstitutional, then the bag's contents and the drugs found in the Defendants' possession would be fruit of the poisonous tree and must be suppressed.  Therefore, should we hold that the stop and frisk was unconstitutional, the State cannot provide any evidence as to the guilt of the Defendants.  Accordingly, we find that the certified issue is dispositive.

## B.  Motions to Suppress

The Defendants contend that the trial court erred when it denied the Motions to Suppress, finding that the arresting police officers had a reasonable suspicion, supported by specific and articulable facts, that the Defendants had committed or were about to commit a crime when the officers confronted the Defendants in the Inn's parking lot.  In its denial of the Motion to Suppress, the trial court found there was sufficient evidence, based on the testimony and weighing the credibility of the witnesses, to support the officers' reasonable suspicion, supported by specific and articulable facts, that the two men were committing a crime.

The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in State v. Odom. 928 S.W.2d 18 (Tenn. 1996).  This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise."  Id. at 23; see State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002).  The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence."  Odom, 928 S.W.2d at 23.  Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact."  Id.  However, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court.  State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001).  The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings.  Odom, 928 S.W.2d at 22-23; State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

When determining whether an officer had reasonable suspicion, a court must consider the totality of the circumstances, as well as the rational inferences and deductions that a trained officer

---

[1]      Although the Defendants explicitly reserved their right to appeal these seven issues, they failed to address the Defendants' reasonable expectations privacy, the search being conducted without an arrest warrant, the search being conducted prior to an arrest, and the search being performed without the consent of the Defendants as part of their appellate briefs.  Accordingly, these issues are waived on appeal.  Tenn. Ct. Crim. App. R. 10(b), State v. Schaller, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997), State v. Turner, 919 S.W. 2d 346, 358 (Tenn. Crim. App. 1995); see also Tenn. R. App. P. 13(b), 27(a)(7) and (g).

may draw from the facts known by the officer. State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992).

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is required to show probable cause.

State v. Pully, 863 S.W.2d 29, 32 (Tenn. 1993), (citing Alabama v. White, 496 U.S. 325, 330 (1990)). Probable cause means "a fair probability that contraband or evidence of a crime will be found and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause." United States v. Sokolow, 490 U.S. 1, 7-8 (1989). When the trial court made its finding, it considered the testimony and credibility of Investigator Byers, Officer Shores, Officer Ogletree, and the manager, Kathy Beeler, as well as the rational inferences and deductions the officers drew from the facts the manager provided to them.

Officer Shores and Investigator Byers testified that they had both spoken with the manager who had told them what she saw in the bag. The manager explained that there was a bag in one of the rooms which contained small bags of white powder, strainers, coffee cups, and a box that said "digital scales" on it. She testified that she told the police that when she tasted the powder, her tongue "went numb." Investigator Byers stated that he saw the Defendants enter the identified room empty-handed and exit the room a few minutes later carrying a bag matching the description provided by the manager.

It was a rational inference that the bag in the room contained drugs and drug paraphernalia, and that Defendant Gifford was carrying the bag that had been in the room when the officers saw the Defendants leaving the room. The evidence does not preponderate against the trial court's finding that the officers' suspicion was reasonable. The court made this finding based the totality of the circumstances, as well as the rational inferences and deductions.

### 1. The Exigent Circumstances Exception to the Warrant Requirement.

The Defendants contend that the trial court erred when it denied the Motions to Suppress because the officers did not have either a search or arrest warrant when the police stopped and frisked the Defendants. Evidence that is discovered as a result of a warrantless search is subject to suppression unless the search or seizure was conducted pursuant to an exception to the warrant requirement. State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992). Accordingly, the Defendants claim that the search and seizures were unwarranted and that all evidence seized at that time, or was discovered as a result of the illegal search, is inadmissible.

One exception to the warrant requirement is the exigent circumstances exception which applies if the delay necessary to procure a search warrant would endanger life or there is a danger of imminent destruction or removal of evidence. State v. McMahan, 650 S.W.2d 383, 387 (Tenn.

Crim. App. 1983) (citing United States v. Guidry, 534 F.2d 1220, 1223 (6th Cir. 1976)). "Where police have found it necessary to keep a suspect or his vehicle under surveillance and then intervene in order to prevent further movement. . ., the courts have generally held that there is no obligation to secure a warrant during the interim." State v. Shaw, 603 S.W.2d 741 (Tenn. Crim. App. (1980).

In Shaw, the police had been informed that Shaw was going to be leaving his home to deliver cocaine "around the Tennessee State University." 603 S.W.2d at 743. The officers set up surveillance of Shaw's residence and the interstate exits near the TSU campus. Id. Shaw left his home and drove toward TSU, and then turned into an alley where he stopped and got out of the car. At that time he was stopped and frisked by the officers who found drugs and drug paraphernalia on him and in his car. Id. Shaw challenged the search on the grounds that the officers did not obtain a warrant. The trial court suppressed the evidence, the State challenged this holding, and the Court of Criminal Appeals reversed. The Court of Criminal Appeals found that "the very mobility of the vehicle supplied the requisite exigent circumstances to validate its warrantless search." Id. at 744.

In this case, the search of the Defendants and the bag Defendant Gifford was carrying was not unreasonable. The manager of the Inn testified that she identified the room she believed contained the drugs and drug paraphernalia to the responding officers. Based on this information, the officers placed the room under surveillance. While surveilling the room, Investigators Byers and Austin were gathering evidence to obtain a search warrant to search the room when the Defendants returned to the Inn. The Defendants entered and shortly thereafter exited the room with a bag matching the description provided by the manager. While a search warrant was required to enter and search the room, the circumstances changed when the Defendants were seen leaving the Inn and heading towards their van. Viewed in light of the circumstances existing at the time the search was conducted, the trial court found the officers' actions reasonable because there was a threat that the evidence would be lost or destroyed if the Defendants were permitted to drive away with the bag. The evidence does not preponderate against the trial court's finding that the threat of the Defendants leaving the Inn satisfied the exigent circumstances exception to the warrant requirement.

## 2. The "Plain View" Doctrine

The Defendants contend that the trial court erred when it denied the Motions to Suppress because the items in the bag were not in plain view and that the Defendants had done nothing to raise suspicion that they had committed or were about to commit a crime when the officers confronted them. The trial court found that, based on the information given to the officers by the manager, the officers had a reasonable suspicion, supported by specific and articulable facts, that the Defendants were in possession of drugs and drug paraphernalia. When a law enforcement officer has a reasonable suspicion that a criminal offense is being committed, the officer is justified in performing an investigative detention of the suspect. Terry v. Ohio, 392 U.S. 1, 21 (1968), State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). Furthermore, officers "may perform a protective frisk of a suspect where the officer has reasonable suspicion that the suspect is armed." State v. Cothran, No. W2002-00485-CCA-R3-CD, 2003 WL 402787, at *6 (Tenn. Crim. App. at Jackson, Feb. 14, 2003).

In this case, the officers relied on their personal observations of the Defendants entering the room under surveillance empty-handed and leaving the room with a bag matching the description given by the Inn's manager. It was a rational inference that Defendant Gifford was carrying the bag containing what was believed to be drugs and drug paraphernalia. This created a reasonable suspicion that the Defendants were engaged in a criminal act. In light of the totality of the circumstances, Investigator Byers and the officers were justified in approaching the Defendants and performing an investigative detention as well as a protective frisk of the Defendants for weapons.

Although the items in the bag carried by Defendant Gifford were not initially visible, the Defendant placed the bag on the ground when the officer performed the protective frisk, at which time the items in the bag became visible to Investigator Byers. Pursuant to the plain view doctrine, items may be seized when (1) the items are in plain view; (2) the viewer has the right to be in the position to view the items; and (3) the incriminating nature of the items is immediately apparent. State v. Hawkins, 969 S.W.2d 936, 938 (Tenn. Crim. App. 1997). Investigator Byers testified that both he and Investigator Austin could see bags of white powder and a coffee cup with white powder residue on it. He explained that based on his experience in the Vice and Narcotics Unit, he recognized the items as likely being drugs and drug paraphernalia. Accordingly, this provided the officers with probable cause to search the Defendants more thoroughly than a mere protective frisk. State v. Jackson, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993). The evidence does not preponderate against the trial court's finding that the officers had a reasonable suspicion which allowed them to confront the two men and proceed to perform an investigative detention and protective frisk of the individuals for weapons. Furthermore, the evidence does not preponderate against the trial court's finding that the items in the bag were in plain view of the officers, that the officers were justified in being in the position to view the items, and that the incriminating nature of the items was immediately apparent to the officers.

### 3. The Officers' Probable Cause and the Places Searched.

The Defendants challenge the trial court's finding that there was sufficient probable cause for the officers to suspect that the Defendants were involved in a criminal offense. As previously stated, Investigator Byers testified that he saw the Defendants enter and shortly thereafter leave the room at the Inn in which there was believed to be a bag containing cocaine and drug paraphernalia. Furthermore, Investigator Byers stated that he observed Defendant Gifford carrying a bag matching the description of the bag provided by the eyewitness.

Based on what Investigator Byers saw in plain view, there was "a fair probability that contraband or evidence of a crime" had been found. State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997), (citing Sokolow, 490 U.S. 1, 7 (1989), (internal citations and quotations omitted)). Investigator Byers testified that both he and Investigator Austin could see bags of white powder and a coffee cup with white powder residue on it. He explained the conclusions he made based on his experience in the Vice and Narcotics Unit. The trial court found that pursuant to the plain view doctrine, the items in the bag could be seized. Accordingly, the trial court held this provided the officers with probable cause to perform a more thorough search of the Defendants than a mere

protective frisk.  <u>State v. Jackson</u>, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993).  The evidence does not preponderate against the trial court finding that there was a fair probability that the officers found evidence of a crime being committed.

The trial court found there to be a nexus between the alleged criminality and the place searched; namely the Defendants and the bag that Defendant Gifford placed on the ground.  The officers stopped the individuals carrying a bag matching the description provided by the manager, who were seen leaving the room under surveillance.  The officers performed a safety frisk of the Defendants and saw what they believed to be drugs and drug paraphernalia in plain view.  The evidence does not preponderate against the trial court's finding that there was a clear nexus between the information provided to officers and the areas that were searched.

## IV.  CONCLUSION

In accordance with the foregoing, we AFFIRM the trial court's denial of the Defendant's Motions to Suppress evidence.

_____
ROBERT W. WEDEMEYER, JUDGE