IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2004 Session

**STATE OF TENNESSEE v. ORSON WENDELL HUDSON**

**Appeal from the Criminal Court for Sumner County**
**No. 331-2003     Jane Wheatcraft, Judge**

---

**No. M2004-00077-CCA-R3-CD - Filed March 15, 2005**

---

The defendant, Orson Wendell Hudson, pled guilty in Sumner County Criminal Court to possession with the intent to sell more than twenty-six grams of cocaine, a Class B felony, and the trial court sentenced him as a Range I, standard offender to eight years in the Department of Correction. The defendant appeals upon certified questions of law from the trial court's denial of his motion to suppress evidence seized pursuant to a traffic stop. He claims the trial court should have granted his motion because (1) the arresting officer's stated justification for stopping his car was pretextual, (2) the officer did not have probable cause to stop his car for following too closely, (3) the officer's questioning transformed his detention into an unreasonable seizure, (4) the officer's questioning of his six-year-old daughter outside his presence was illegal, and (5) the officer coerced his consent to search. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Michael T. Pickering, Gallatin, Tennessee, for the appellant, Orson Wendell Hudson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Dee David Gay, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a roadside search of the defendant's car which revealed the presence of approximately one-half pound of cocaine. The defendant moved the trial court to suppress the evidence seized. One person testified at the suppression hearing, Eighteenth Judicial District Drug Task Force Investigator Jody Starks. Investigator Starks testified that he "was working interdiction" on I-65 when he stopped the defendant's car for following a recreational vehicle (RV) too closely. He said that when he saw the defendant's car, it was less than one car length behind the RV. He said

he believed the following so closely would potentially lead to a rear-end collision "based upon any maneuver that the RV might have to make, whether it be stopping, engine trouble, [or] a flat tire." He said that after the defendant pulled to the side of the road, he asked the defendant to step to the rear of his car and bring his driver's license with him. He said that he asked the defendant where he was going and that the defendant replied he was going to Michigan City, Indiana. Investigator Starks said he also talked to the defendant about the status of his driver's license, his address, and his driving history. He said he also explained to the defendant the "rule of thumb for following other vehicles on the interstate." He said that the defendant's license was valid but that the defendant did not have insurance. He also said that during his investigation, he noticed that the defendant's rear brake light was not working.

Investigator Starks acknowledged he had a conversation with the defendant's six-year-old daughter, who was seated in the passenger seat of the defendant's car. He said he asked her whether she was wearing a seatbelt and where she and her father were going. He said she replied that she was wearing her seatbelt and that they were headed to Ohio to visit some of her father's friends. Investigator Starks testified that based upon the conflicting stories concerning destination, he became suspicious of criminal activity. He said he then asked the defendant about the presence of marijuana and cocaine in the car. He said the defendant told him there were no drugs in the car. Investigator Starks said that he asked the defendant about his arrest history and that the defendant replied that he had been arrested for domestic battery and possession of a handgun. He said that based upon the defendant's criminal history, he asked the defendant for permission to search his car for weapons to which the defendant consented. Investigator Starks said he allowed the defendant and his daughter to wait by the side of the road while he searched the car. He said the search revealed two marijuana "blunts" in the ashtray, burned marijuana seeds on the passenger seat, and one-half pound of cocaine in the trunk.

After considering the evidence, including a videotape made of the entire sequence of events by Investigator Starks' patrol car, the trial court found that Investigator Starks' actions constituted "just good police work." The court further found that

> the officer made the stop . . . followed that up with the warning ticket and then asked the Defendant, as they do in many cases, about his criminal history. He found out that there was a weapons charge, and then asked to search the vehicle for weapons.
> The Court doesn't find anything that is constitutionally impermissible in this; and, therefore, I'm going to deny the motion to suppress.

Following the trial court's denial of the motion to suppress, the defendant pled guilty reserving the following certified questions of law: (1) whether Investigator Starks stopping the defendant's car violated the Fourth Amendment, (2) whether the investigation exceeded the scope of the detention creating an unreasonable seizure under the Fourth Amendment, and (3) whether the defendant's consent was coerced.

On appeal the defendant contends the trial court erred in denying his motion to suppress because (1) there was no basis for stopping his car, (2) the reasons for detaining him were merely pretextual, (3) the length of his detention was unreasonable, (4) the questioning of his daughter outside his presence was illegal, and (5) his consent to search was coerced. The state argues that (1) a constitutionally valid basis existed for stopping the defendant's vehicle, (2) Investigator Starks' subjective intentions are irrelevant, (3) the defendant's detention was reasonable, (4) the defendant's argument concerning the illegality of the questioning of his daughter is not properly before this court, and (5) the defendant's consent was valid. We agree with the state.

## ANALYSIS

Initially we note that the certified questions of law do not address an issue of whether the questioning of the defendant's daughter outside his presence was illegal. Therefore, that issue is not properly before this court. See State v. Jenkins, 15 S.W.3d 914, 917-18 (Tenn. Crim. App. 1999). However, we will consider the questioning of the defendant's daughter relative to the scope of the investigation and the length of the detention.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

## I. JUSTIFICATION FOR STOPPING THE DEFENDANT'S CAR

The defendant claims that his car was stopped in violation of the Fourth Amendment and article 1, section 7 of the Tennessee Constitution. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)). An automobile stop constitutes a seizure within the meaning of both the Fourth Amendment of the United States Constitution and article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The police may stop a vehicle if they have either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants are subject to seizure for violation of the law. See Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391 (1979); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992); State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause to arrest exists if the facts and circumstances within an officer's knowledge are sufficient to warrant a prudent person in believing that the arrestee has committed an offense. Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964); State v. Melson, 638 S.W.2d 342, 350-51 (Tenn. 1982). An

officer's subjective intention for stopping a vehicle is irrelevant, as long as independent grounds exist for the detention. See Whren v. United States, 517 U.S. 806, 116 S. Ct. 1769 (1996); State v. Vineyard, 958 S.W.2d 730 (Tenn. 1997).

Tennessee's following too closely statute provides that a "driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway" and that any "violation of this section is a Class C misdemeanor." T.C.A. § 55-8-124(a), (e). The record reflects that Investigator Starks stopped the defendant's car based upon his observation that the defendant was following an RV at less than one car's length. This constituted probable cause that the defendant was in violation of the law. Id. Because Investigator Starks' subjective intention when stopping the defendant's car is irrelevant, this issue is without merit.

## II. LENGTH OF THE DEFENDANT'S DETENTION

The defendant next claims that the entire seizure was unreasonable because Investigator Starks' investigation exceeded the scope of the initial detention. Whether a traffic stop is initiated based on probable cause or reasonable suspicion, a resulting investigation is reviewed under the framework established in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968). See United States v. Brignoni-Ponce, 422 U.S. 873, 95 S. Ct. 2574 (1975). Such investigations require that an officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20, 88 S. Ct. at 1879. The detention "must be temporary and last no longer than necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983); State v. England, 19 S.W.3d 762, 767-68 (Tenn. 2000). Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. Royer, 460 U.S. at 500, 103 S. Ct. at 1326. "The proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998) (citation omitted). "If the time, manner or scope of the investigation exceeds the proper parameters," a constitutionally permissible stop may be transformed into one which violates the Fourth Amendment and article 1, section 7. United States v. Childs, 256 F.3d 559, 564 (7th Cir. 2001); see also State v. Morelock, 851 S.W.2d 838, 840 (Tenn. Crim. App. 1992). In the context of determining whether investigative methods run afoul of the Fourth Amendment and article 1, section 7, this court has stated "that requests for driver's licenses and vehicle registration documents, inquiries concerning travel plans and vehicle ownership, computer checks, and the issuance of citations are investigative methods or activities consistent with the lawful scope of any traffic stop." State v. Gonzalo Garcia, No. M2000-01760-CCA-R3-CD, Davidson County, slip op. at 22 (Tenn. Crim. App. Feb. 20, 2002) (citing United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000); United States v. Hill, 195 F.3d 258, 268 (6th Cir. 1999); United States v. Lyton, 161 F.3d 1168, 1170 (8th Cir. 1998)), overruled on other grounds by State v. Garcia, 123 S.W.3d 335 (Tenn. 2003).

In this case, we hold that the questioning of the defendant, which the record reflects lasted approximately six and one-half minutes, did not create an unreasonable detention. Investigator

-4-

Starks initially asked the defendant questions concerning his license, registration, insurance, and travel plans and explained to him the general rule of following too closely. He then noticed that the defendant's tail light was not working properly. Investigator Starks next informed the defendant he was going to check his driver's license for outstanding warrants and criminal history and asked the defendant if he had been arrested before. In response, the defendant acknowledged that he had been arrested for domestic battery and unlawful possession of a handgun. After questioning the defendant, Investigator Starks determined whether the defendant's daughter was wearing her seatbelt in compliance with state law and asked her about their travel plans. We believe that given the evidence elicited during this investigation, which we conclude was conducted within the scope of the original detention, Investigator Starks had reasonable suspicion to ask the defendant for permission to search his car for weapons.

### III. VOLUNTARINESS OF THE DEFENDANT'S CONSENT

Finally, the defendant contends that the consent he gave Investigator Starks to search his car was the result of coercion. The state argues that the defendant's consent was given voluntarily, free from coercion.

The analysis of any warrantless search must begin with the proposition that such searches are per se unreasonable under the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-delineated exceptions. See Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967); State v. Tyler, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Before the fruits of a warrantless search are admissible as evidence, the state must establish by a preponderance of the evidence that the search falls into one of the narrowly drawn exceptions to the warrant requirement. See State v. Shaw, 603 S.W.2d 741, 742 (Tenn. Crim. App. 1980). A warrant is not needed when there is a consent that is "unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992). Thus, the question becomes whether the consent to the search was given voluntarily. See State v. Jackson, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993).

Investigator Starks testified that as a result of the defendant's admission that he had a prior arrest for illegal possession of a handgun, he asked him for permission to search the car. The record reflects that Investigator Starks was the only law enforcement officer present at the time of this request. Investigator Starks also testified that he did not arrest the defendant until after discovery of the cocaine. Further, he said he allowed the defendant to stand by the side of the road while he was searching the car. Based upon the testimony of Investigator Starks and the videotape of the stop, we conclude the defendant's consent to search was freely given.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE