IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 16, 2010 Session

**STATE OF TENNESSEE v. EDWARD JOHNSON**

**Interlocutory Appeal from the Circuit Court for Cannon County**
**No. F08-87       Robert E. Corlew, III, Judge**

**No. M2009-01372-CCA-R9-CD - Filed July 22, 2010**

In this Rule 9 interlocutory appeal, the defendant, Edward Johnson, appeals the Cannon County Circuit Court's denial of his motion to suppress. Believing them to still be married, officers approached the defendant's ex-wife and sought consent to search the property during a manhunt. During the subsequent search, officers located a marijuana laboratory in a garage on the defendant's property. The defendant was arrested and charged with manufacturing marijuana over 100 plants, possession of a controlled substance with intent to sell, possession of drug paraphernalia, and maintaining a building for the purpose of keeping or selling controlled substances. The defendant filed a motion to suppress, challenging the search. The trial court found that the search was valid because the defendant's ex-wife had common authority over the garage. On appeal, the defendant challenges the denial, specifically questioning whether: (1) his ex-wife consented to a search and, if so, whether she had common authority over the property sufficient to allow her to give valid consent; and (2) officers violated his right to be free from unreasonable searches and seizures when they entered his property and surrounded the buildings without a warrant in the absence of exigent circumstances. After review, we disagree with the trial court and conclude that the defendant's ex-wife had no actual common authority over the garage. Nonetheless, because the facts available to the officers would have warranted "a man of reasonable caution in the belief that the consenting party had authority over the premises," we affirm the denial of the motion to suppress. Moreover, we conclude that the officers did not violate the defendant's rights by entering the property prior to consent. As such, the denial of the motion to suppress is affirmed, and the case is remanded to the trial court for trial.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Luke A. Evans and Chris L. Richardson, Murfreesboro, Tennessee, for the appellant, Edward Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and David L. Puckett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On June 20, 2008, various members of law enforcement were involved in a fugitive hunt for Jim Flesher, a known associate of the defendant and the defendant's ex-wife, Joanne Johnson. In an attempt to locate Mr. Flesher, officers went to 4545 Big Hill Road and 4501 Big Hill Road, neighboring properties owned by the defendant and his ex-wife. Upon arriving, officers fanned out and secured a tactical perimeter around the buildings on the properties. Detective Wilder approached the residence located at 4545 Big Hill Road and made contact with Ms. Johnson, asking her for permission to search the property. Ms. Johnson told them that Mr. Flesher was not present but that they could search.

There were some conflicts in the testimony regarding how the consent given by Ms. Johnson was relayed to the officers outside the property. Detective Wilder testified that he did not inform any of the officers personally that consent had been given. In direct contravention, Officer Locklayer stated that he did not enter the shop until Detective Wilder had personally informed him that consent had been given. However, Wilder testified that other officers were present in the home when Ms. Johnson consented and that it was possible that one of them had relayed the message to the officers outside.

Based upon Ms. Johnson's consent, officers proceeded to begin to conduct a warrantless search of the properties at 4501 and 4545 Big Hill Road. While searching the garage/shop building at 4501 Big Hill Road, officers observed marijuana leaves in plain view on the floor. Wilder stated that he was also able to smell raw marijuana while standing outside the building. At that point, officers obtained a search warrant for both 4501 and 4545 Big Hill Road. The search revealed a sophisticated marijuana grow laboratory beneath the shop building. Officers recovered several growing plants, some processed marijuana, and drug paraphernalia. Both the defendant and his ex-wife were arrested and charged.

A discussion of the relationship between the defendant and Ms. Johnson, as well as their ownership of the various properties, is helpful in determining whether Ms. Johnson had authority to consent During their marriage, the defendant and Ms. Johnson, together, owned

both 4501 and 4545 Big Hill Road. They were legally divorced in 2002 and, at that time, divided ownership of the property, with Ms. Johnson retaining ownership of 4545 and the defendant retaining 4501. Quit claim deeds were issued to this effect, and the county tax records support this division.

The two properties are located next door to each other, and they have separate driveways and mailboxes. Ms. Johnson's property at 4545 Big Hill Road consists of a ten-acre tract of land and a two-story house. The defendant's land consists of thirteen acres, a large shop/garage, a small storage shed, and a house. The Johnsons' daughter and son-in-law live in the house at 4501 Big Hill Road. According to testimony, the defendant resides with them, although he does occasionally spend nights with Ms. Johnson when he experiences health problems.

Detective Wilder testified that prior to going to the properties in question, he believed them to be "the Johnson properties" and that both the defendant and Joanne Johnson lived at 4545 Big Hill Road. He testified that he believed that they lived in a two-story home with a big shop out on Big Hill Road. He stated that his belief was based upon "working in Cannon County, from knowing folks, from hearing things. . . ." Though Detective Wilder testified that he did not rely specifically upon them, current telephone books were introduced into evidence which listed the defendant and Joanne Johnson as a couple residing at both residences. In books published in May 2008 and September 2009, listings were contained for "Edward and Joanne Johnson at 4545 Big Hill Road" and for "Joanne and Edward Johnson at 4501 Big Hill Road." Moreover, he testified that, after the initial discovery of the marijuana leaf, Ms. Johnson walked to the shop and that Detective Wilder asked her if she owned the shop as well. Ms. Johnson responded affirmatively. Finally, prior to obtaining the search warrant, Detective Wilder testified that he checked the tax records on the property and that he believed that the assessment records reflected that both the defendant and Ms. Johnson owned both the house and the shop. However, on cross-examination, when asked to review the documents, he acknowledged that the portion of the document listing Ms. Johnson's name was under "sale data."

Additionally, testimony established that Ms. Johnson and the defendant's brother operated Johnson Tree Service. It was further stated that, at times, the shop at 4501 was occasionally used by an employee to repair vehicles belonging to the tree service. However, it was specified that Ms. Johnson did not come into the shop during the work or to check on the progress.

The defendant has been indicted by a Cannon County grand jury for manufacturing marijuana over 100 plants, felony possession of marijuana with intent to sell, possession of drug paraphernalia, and maintaining a dwelling for the purposes of keeping or selling a

controlled substance. The defendant filed a motion to suppress the seized evidence in the trial court. After hearing the motion, the trial court denied the motion but granted the defendant's request for permission to file a Rule 9 interlocutory appeal in this court, which is now before this court. The denial of the motion to suppress is the issue currently before this court.

**Analysis**

On appeal, the defendant is arguing that the trial court erred in denying his motion to suppress. An appellate court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise. *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. On appeal, this court will review a trial court's application of law to the facts *de novo* with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

Both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to safeguard the privacy and security of individuals against arbitrary invasions of government officials." *Keith*, 978 S.W.2d at 865. The Tennessee Supreme Court has noted that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution,] and that federal cases applying the Fourth Amendment should be regarded as 'particularly persuasive.'" *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S.W.2d at 629 (citing *Coolidge v. New Hampshire*, 403 U.S. 454-55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003). The most common exceptions to the requirement for a search warrant are: (1) consent to search; (2) a search incident to a lawful arrest; (3) probable cause to search with exigent circumstances; (4) in hot pursuit; (5) a stop and frisk situation; and (6) plain view. *State v. Bartram*, 925 S.W.2d 227, 230 (Tenn. 1996). "If the circumstances of

a challenged search and seizure come within one of the recognized exceptions, the fruits of that search and seizure are not subject to operation of the exclusionary rule and may be properly admitted into evidence." *State v. Shaw*, 603 S.W.2d 741, 743 (Tenn. Crim. App. 1980).

One exception to the warrant requirement for a valid search is that an individual gives consent to the warrantless search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). The consent must, however, be "unequivocal, specific, intelligently given and uncontaminated by duress or coercion." *State v. Brown*, 836 S.W.2d 530, 547 (Tenn. 1992). In determining the validity of a consent to search, courts must look at the totality of the circumstances surrounding the obtaining of the consent. *United States v. Drayton*, 536 U.S. 194 (2002). In most circumstances, valid consent exists when given "either by the individual whose property is searched or by a third party who possesses common authority over the premises." *State v. Ellis*, 89 S.W.3d 584, 592 (Tenn. Crim. App. 2000) (citations omitted). The Supreme Court has defined common authority as the:

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974); *see also Bartram*, 925 S.W.2d at 231. This court has previously concluded that valid consent exists if: (1) the third party in fact had common authority; or (2) a reasonable person, given the facts and circumstances available to the police, would have concluded "that the consenting party had authority over the premises." *Ellis*, 89 S.W.3d at 593 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990)).

On appeal, the defendant has presented a multi-pronged argument with regard to why the trial court erred in denying his motion to suppress. First, he contends that the consent given by Joanne Johnson was not validly given with regard to 4501 Big Hill Road. Second, he contends that, even if the consent was valid, she did not have common authority to give consent to search property belonging solely to the defendant. Finally, he asserts that the officers were not in a lawful position when they allegedly detected the odor of marijuana, prior to receiving consent, because they should not have entered the curtilage of the defendant's property absent exigent circumstances.

## I. Validity of Consent

In support of his argument that Ms. Johnson did not give consent to search the property at 4501 Big Hill Road, the defendant relies upon the "inconsistencies and contradiction regarding the officers' testimony," which he asserts seriously calls into question the credibility of the officers. Specifically, he refers to the inconsistencies with regard to how the consent given by Johnson to Wilder was relayed to the officers who were outside. He asserts that it is unclear from the testimony given whether officers actually searched the shop prior to consent being relayed. He further relies upon the fact that Detective Wilder never specifically asked Ms. Johnson whether she owned the property at 4501 Big Hill Road but, rather, only asked her if he could search "her property."

We find that the petitioner's assertions are misplaced. His argument is essentially asking this court to reweigh the credibility determination implicitly made by the trial court. As we have repeatedly held, that is not the province of this court. The record indicates that consent was given prior to the officer's entering the shop building. Moreover, we cannot give credence to the defendant's contention regarding whether or not Detective Wilder specifically asked to search the property at 4501 Big Hill Road. The record indicates that he asked Ms. Johnson for consent to search her property, which she gave, and that Detective Wilder was under the assumption that "her property" included the shop. An officer is not required to specifically request permission to enter each building on a property prior to entry. Consent given to search "her property" was sufficient in this case, based upon Detective's Wilder's reasonable belief that Ms. Johnson was the owner of the property, *see infra*.

## II. Common Authority

Next, the defendant argues that the trial court erred in its determination that the Ms. Johnson had common authority over the property at 4501 Big Hill Road, which would thereby invalidate her consent. He contends that her connection to the shop building was insufficient, as a matter of law, to provide her with any authority to consent to a search. He relies upon the fact that Ms. Johnson had no ownership interest in the property and that she and the defendant, the owner of the property, had been divorced for more than six years. He also relies upon the fact that Ms. Johnson rarely went to the shop and did not access the building without the defendant's consent.

The trial court denied the defendant's motion based upon its finding that Ms. Johnson had actual common authority because she "utilized the garage and/or shop for the repair of vehicles under her control" and because one of her employees occasionally worked in the shop on those vehicles. As noted, the Supreme Court has defined "common authority" as the "mutual use of the property by persons generally having joint access or control for most purposes." *Matlock*, 415 U.S. at 171. Based upon this definition, we are unable to agree with the trial court that actual common authority existed. The mere fact that an employee

utilized the shop on rare occasions to repair vehicles is not the type of interest the Supreme Court was referring to in its definition of "common authority." In fact, the Court specifically stated that common authority was "not to be implied from a mere property interest a third party has in the property." *Id*. at 171. The record is sufficiently clear that Ms. Johnson had no actual ownership interest in the property nor was it established that she utilized the property in any way sufficient to establish actual authority over said property.

Nonetheless, as noted previously, it has been held that the State may also establish common authority in a second way, that being by demonstrating that the facts available to the searching police officers would have warranted "a man of reasonable caution in the belief that the consenting party had authority over the premises." *Ellis*, 89 S.W.3rd at 593 (2000) (quoting *Illinois v. Rodriguez*, 497 U.S. at 188-89). Whether the facts presented at the time of the search would "warrant a man of reasonable caution" to believe the third party has common authority over the property depends upon all of the surrounding circumstances. *Rodriguez*, 497 U.S. at 188. Moreover, the State may not establish common authority of a third party "if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to 'mutual use' by the person giving consent, 'then warrantless entry is unlawful without further inquiry.'" *United States v. Waller*, 426 F.3d 838, 846 (6th Cir. Tenn. 2005).

The defendant argues that the officers were presented with an ambiguous situation in that the properties in question had separate driveways, were approximately 100 yards apart, were in no way connected, and had separate mailboxes. He also argues that the officers should have taken further steps to determine if the defendant's property was subject to mutual use by Ms. Johnson. The defendant asserts that Detective Wilder assumed that the consent given by Ms. Johnson to search the property included the shop building. We disagree with the defendant's contentions.

Detective Wilder testified that "from working in Cannon County, from knowing folks, from hearing things" that the properties in question were the Johnson property. That's [the] Johnsons' house, that's [the] Johnsons' shop. That's where [the defendant] and Joanne Johnson live." Thus, apparently, the Johnsons had a reputation in the community as a married couple that lived together. This is supported in the record by the admission of the current phone books which listed the defendant and Ms. Johnson together. Even though the books were not relied upon by the officers, it is indicative of the fact that the general knowledge in the community was that the defendant and Ms. Johnson remained together. In fact, the next door neighbor testified at the hearing that she was not sure if the defendant and Ms. Johnson were divorced, although she thought Ms. Johnson might have told her so. Clearly, the issue of the couple's divorce and separation of property was not common

knowledge. Thus, we cannot fault the officer for failing to seek additional information in this regard. If an officer reasonably believes that two people are co-owners of a property, then he is not required to inquire further of the parties with regard to their actual ownership interest. Detective Wilder asked Ms. Johnson if he could search the property, and she responded in the affirmative. We conclude that it was more than reasonable to assume that meant all the "Johnson properties." Thus, the denial of the motion to suppress was proper.

## III. Detection of the Odor of Marijuana Did Not Provide a Valid Basis for Search

Finally, the defendant asserts that the "alleged detection of the odor of marijuana did not provide a valid basis for searching the defendant's property because: (1) Officer Locklayer was not in a lawful position when he allegedly smelled the odor of marijuana; and (2) while the alleged odor of marijuana might provide probable cause, it did not provide a basis for the warrantless entry absent exigent circumstances. We must admit that we are somewhat confused at the defendant's argument. He noted that the trial court, in its ruling, appeared to be treating the fact that the officers detected the odor of marijuana as a justification to obtain a warrant. However, we are unclear as to the relevance of this argument, as the search was based on the consent given by Ms. Johnson. The officer's did not search the buildings based upon their detection of the smell of the marijuana. Thus, the trial court's statements go to the validity of the search warrant, which is not the issue before us on appeal.

Regardless, we would disagree with the defendant's first contention that his rights were violated, prior to the giving of the consent, by the officers' entry on the property and their surrounding of the buildings in a tactical perimeter. We agree with the defendant that the curtilage of the home "is entitled to the same Fourth Amendment protections as the home itself." *See State v. Prier*, 725 S.W.2d 667, 671 (Tenn. 1987). We would also agree that the officers in this case did enter the curtilage of the property in question. However, we cannot conclude that the officers conducted a search of the area once there. They were simply there to keep the fugitive from escaping prior to the consent to search being given. It was specifically testified to that no action was taken until Ms. Johnson gave her express consent to search. Regardless, even if we consider that the officers entered the curtilage in order to conduct a search, contrary to the defendant's argument, we would conclude that exigent circumstances did exist. "Exigent circumstances are those in which the urgent need for immediate action becomes too compelling to impose upon governmental actors the attendant delay that accompanies obtaining a warrant." *State v. Meeks*, 262 S.W.3d 710, 723 (Tenn. 2008). The Tennessee Supreme Court has recognized certain situations that are sufficiently exigent to justify a warrantless search, one of which is to thwart escape. *Id*. That is what the officers in this case were doing. They fanned out over the property to prevent the fugitive from a possible escape if he was, in fact, present on the property. Thus, the defendant's

argument is misplaced.

## CONCLUSION

Based upon the foregoing, the decision of the Cannon County Circuit Court to deny the motion to suppress is affirmed, and the case is remanded for trial.


_____

JOHN EVERETT WILLIAMS, JUDGE