# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
January 24, 2006 Session

## STATE OF TENNESSEE v. JAMES CASTILE

**Appeal from the Circuit Court for Montgomery County**
**No. 40200680    Michael R. Jones, Judge**

---

**No. M2004-02572-CCA-R3-CD - Filed June 28, 2006**

---

The appellant, James Castile, was indicted with charges of manufacturing methamphetamine, possession of methamphetamine with intent to sell, possession of methamphetamine with intent to deliver and criminal impersonation.  Prior to trial, the trial court denied a motion to suppress the evidence which alleged that the evidence seized as a result of a search of his person and a search of his hotel room was unconstitutional.  After a jury trial, the appellant was found guilty of manufacturing methamphetamine, possession of methamphetamine with the intent to deliver, simple possession of methamphetamine and criminal impersonation.  At a sentencing hearing, the trial court disregarded the simple possession conviction as a lesser-included offense of the manufacturing and possession counts and sentenced the appellant as a Range II offender to an eight-year sentence for manufacturing methamphetamine, an eight-year sentence for possession of methamphetamine with intent to deliver and a six-month probationary sentence for criminal impersonation.  The trial court ordered the sentences to run concurrently to each other, but consecutively to a previously imposed sentence for which the appellant was on probation from the State of Kentucky.  After the denial of a motion for new trial, the appellant filed a timely notice of appeal.  On appeal, the appellant argues that: (1) the trial court erred in denying the motion to suppress; (2) the evidence was insufficient to support the verdict; (3)  the trial court erred by sentencing the appellant as a Range II offender and; (4) the trial court erred by ordering the sentence to be served consecutively to the Kentucky sentence.  For the following reasons, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Roger E. Nell, District Public Defender, Clarksville, Tennessee, for the appellant, James Castile.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; John Carney, District Attorney General, and Helen Young, Assistant District Attorney General, for the appellant, State of Tennessee.

## OPINION

### Factual Background

In December of 2002, the Montgomery County Grand Jury indicted the appellant with manufacturing methamphetamine, possession of methamphetamine with the intent to sell, possession of methamphetamine with the intent to deliver and criminal impersonation for events occurring on October 21, 2002. In February of 2003, the appellant filed a motion to suppress the evidence, arguing that the evidence received as a result of a search of his person and all evidence obtained from his hotel room as a result of the execution of a search warrant were procured in violation of "his rights under the state and federal constitution."

### Evidence at the Hearing on the Motion to Suppress

The trial court held a hearing on the motion to suppress on March 20, 2003. At the hearing, Officer Bobby Hill of the Clarksville Police Department testified that he was dispatched to the Ramada Limited Hotel after the front desk clerk called 911 to report a "chemical smell coming from one of the rooms." Officer Jeffrey Jackson arrived at the scene around the same time as Officer Hill. The officers stopped by the front desk to assess the situation. The front desk clerk told the officers that the chemical smell was first reported by the person staying in the room above the appellant's room.

The officers approached the room and knocked on the door. The appellant answered the door, stepped outside and closed the door behind him. Officer Hill testified that he could actually smell the chemical smell emanating from the room before the appellant ever opened the door. The appellant identified himself as "Brian Bozell" from Florida and claimed that he did not have any kind of identification on him. The appellant explained that the smell coming from the room was "White Castles" that he was eating for dinner. The appellant denied the officers's request to search the room at that time.

The officers continued to talk to the appellant for several minutes until Lieutenant Phillip Ashby of the Clarksville Police Department arrived on the scene. Lieutenant Ashby asked the appellant if he could search the room. The appellant again denied this request. Lieutenant Ashby noticed a "strong" chemical smell coming from the appellant's hotel room that he described as an "extremely strong odor of ether." The appellant told Lieutenant Ashby that he did not have a wallet and did not know his own social security number.

Sometime thereafter, Drug Agent Donnie Robbins of the Clarksville Police Department arrived on the scene. Upon his arrival, he noticed a "strong odor of ether emitting from room one ten." Agent Robbins then went to the room above the appellant's where "the smell of ether was to

the point that I asked him [the occupant] to leave." Agent Robbins next went to speak with the appellant who identified himself as Brian Bozell from Fort Lauderdale, Florida. The appellant again denied consent to search the room. The appellant then gave Agent Robbins permission to "pat him down." During the pat-down, Agent Robbins "recovered a wallet" from the appellant's "left rear pants pocket." At that point, the appellant started protesting. Agent Robbins retrieved the identification from the wallet that identified the appellant as "James Castile." After running the appellant's name through NCIC, the officers discovered that there was an outstanding warrant for the appellant in Christian County, Kentucky. At that point, the appellant was placed in custody for criminal impersonation and the outstanding warrant. Upon inspecting the wallet, Agent Robbins discovered receipts for "precursors that are used in the manufacturing process of methamphetamine." Agent Robbins filled out the affidavit for a search warrant at that time. At the conclusion of the hearing, in denying the motion to suppress, the trial court made the following findings of fact and conclusions of law:

> This particular case began with the call from the motel clerk that there was a strong smell of ether coming from room one ten. The officers were dispatched. They went to room one ten. There was a very strong odor of ether coming from room one ten. The officers even went further, checked the other rooms to make sure that there was no smell coming from another room. So, it was definitely isolated down to room one ten.
>
> When Officer Robbins arrived he found out that the Defendant had given the name of Brian Bozwell [sic] from Fort Lauderdale, Florida; he also could - - at that point still there was a strong odor of ether. He went to the room above and even got the man or woman, whatever, to leave that room.
>
> He then asked the Defendant again his name. He had no I-D. He knew at that time from Lieutenant Ashby that the Defendant had said he didn't have a wallet with him, could not even remember his social security number. At that point Mr. Robbins went back to the - - went to the clerk and got the registration which he believed, at this point, to have a social security number.
>
> . . . .
>
> Then to the front desk; got the registration. Came back and asked him if he knew the registration - - the social security number in which he registered. He said no. At that point is when the pat down or consent to search was asked.
>
> You add those facts together and things changed as this scene progressed. It got much suspicious as [the appellant] continued to stand there with the officers. So, I think Mr. Robbins certainly had the right to ask him to allow him to pat down.

The identity of the Defendant was certainly in question at that time. He had denied to the officers that he had a wallet. When he found this wallet he seized it. I think under the facts and circumstances of this case he certainly had the right to seize it. It wasn't a weapon. Didn't think it was a weapon.

The Defendant had, under these circumstances, the strong smell of ether; the Defendant providing very evasive answers to the officer he - - and particularly having told him that he didn't have a wallet and there was a wallet right there. At that time Officer Robbins then saw that the identification was not the same, and at that point is when the Defendant starts objecting you can't go through my wallet.

Then a few minutes then there's the - - an arrest for criminal impersonation and arrest based on outstanding warrants. Certainly, incident to an arrest a billfold would have been seized from the person as well - - all contents examined.

But what we're really here on is the search warrant. Now the affidavit in the search warrant says that - - part of it is your affiant was called to the room and smelled a strong odor of other emitting from room one ten.

It's my opinion that a strong smell of ether is sufficient for probable cause for which the search warrant could be issued. I think you can reasonably interpret the last sentence about the experience and training. Production of methamphetamine would include the smell of ether. So, I believe that the search warrant is valid and that everything that is seized as a result of that search is valid.

I, frankly, believe the officer could have, with the smell, walked right in right then. I mean, that is danger - - very dangerous situation. Could have been other people in the room. Certainly, the other people in the rooms above and around were in danger of an explosion and they could have, you know.

At some point thereafter, counsel for the appellant reviewed the video tape from the patrol car and requested a reconsideration of the denial of the motion to suppress. There is no transcript of the hearing on the motion to reconsider, but a "Partial Statement of the Evidence" was filed by counsel for the appellant and signed and approved by the trial court. The statement reads as follows:

On April 21, 2003, the Defendant's Motion to Reconsider the Defendant's Motion to Suppress was addressed by the court. The parties introduced a videotape taken by a stationary camera located in one of the patrol officer's automobile[s] as an exhibit to the motion. Counsel presented a short argument as to how the videotape related to the amount of time between the initial contact with the Defendant and the execution of the search warrant. The Court was given the opportunity to review the tape and the matter was reset to be addressed in conjunction with the scheduled trial date of April 24, 2003.

On April 24, 2003, the Court ruled on the Motion to Reconsider. The Court, in reviewing the video had used the times as reflected on the counter on the tape. The Court made specific findings as it related to the Motion. The two patrol officers who originally testified are overheard on the tape at the door to the Appellant's motel room. They had previously, according to their testimony, discussed a complaint about a chemical odor with the front desk clerk. They also had a short conversation which was mostly unintelligible with a person on the second floor balcony of the hotel. As they approach the door, at 18:22, one patrol officer asks the other whether he can smell anything. Both indicate that they cannot smell anything. They knock on the door of the room and it is opened. The two officers question the Defendant at some length, all of which is captured in real time on the video.

Lieutenant Phillip Ashby, who also testified at the Motion to Suppress, arrives at the motel and is captured on video. He arrives at around 18:29 and questions the Defendant and requests consent to search. He specifically tells the Defendant he can smell ether. The Defendant is again questioned by Agent Donnie Robbins seeking consent to search at 18:51. At 19:27, Lieutenant Ashby apparently remembers the car camera. He asks if it is on, and receiving an affirmative answer, tells the officer whose car it is to "turn it off." The directive is complied with, and for the next fifteen minutes, the scene progresses with video, but no audio. The Court, in its ruling, relates that while troubled by that instruction by the lieutenant, nothing is observed which the Court finds has a bearing on its ruling on the suppression. Nothing that is observed on the tape, that causes the Court to reverse its earlier ruling denying the Motion to Suppress. The Court is of the opinion that the odor, standing alone, gave the officers grounds to search the room, and for that reason the detention of an hour and a half prior to Agent Robbins leaving to obtain the warrant does not invalidate the search.

**Trial Testimony**

At trial, the officers's testimony was consistent with their testimony at the hearing on the motion to suppress. The search of the appellant's hotel room resulted in the recovery of numerous items and substances associated with the manufacturing of methamphetamine, including eleven packages of psuedoephedrine, a hot plate, a notebook containing a formula for methamphetamine, water purifier, five thermometers, a coffee grinder, tubing, plastic baggies and three bags of methamphetamine with a total weight of about 4.75 grams. Investigators also found chemicals common to the methamphetamine manufacturing process, such as acetone, methyl alcohol, drain opener, salt and two jars of a clear substance later identified as liquid ephedrine in a chemical solvent.

The appellant testified in his own defense. He testified that he had been using methamphetamine for approximately four to five years prior to his arrest and that he is an addict. He claimed that he manufactured methamphetamine for his personal use approximately fifty times during the course of his addiction, using several grams a day in order to satisfy his need for the drug.

The appellant also described, in detail, the process of making methamphetamine. During his discussion of the process, he noted that he did not have all of the items required to make methamphetamine. He explained that he did not have the anhydrous ammonia or the lithium required to complete the process. However, he admitted that he had completed the first step in the process by extracting the pseudoephedrine in a solution that was contained in the jars found at the hotel room.

During cross-examination, the appellant admitted that he smoked methamphetamine that he made with friends who gave him rides to various places.

At the conclusion of the evidence, the jury found the appellant guilty of manufacturing methamphetamine, possession of methamphetamine with the intent to deliver, criminal impersonation and the lesser-included offense of simple possession of methamphetamine with respect to the possession with intent to deliver count.

### Sentencing

The trial court determined at the sentencing hearing that the appellant was a Range II offender, having three previous felony convictions from the State of Kentucky. The trial court sentenced the appellant to eight years for manufacturing methamphetamine, eight years for possession of methamphetamine with the intent to deliver and six-months probation for criminal impersonation. The trial court ordered that the sentences run concurrent to each other, but consecutive to an unserved sentence on a conviction from Kentucky. The trial court based its decision to run the sentences consecutive to the Kentucky sentence on the finding that the appellant was a professional criminal with an extensive criminal history and a determination that the present offenses occurred while the appellant was on probation.

The trial court denied a motion for new trial. On appeal, the appellant seeks resolution of the following issues: (1) whether the trial court erred in denying the motion to suppress the evidence; (2) whether the evidence was sufficient to support the verdict; (3) whether the trial court erred by finding the appellant to be a Range II offender; and (4) whether the trial court erred by ordering the sentences to be served consecutively to the unserved Kentucky sentence.

<u>Analysis</u>

<u>Motion to Suppress</u>

First, the appellant argues that the trial court erred by denying his motion to suppress the evidence seized from his hotel room pursuant to a search warrant. Probable cause for the warrant was based on the detection of the odor of ether coming from the appellant's motel room, the appellant's criminal impersonation and the discovery of several receipts for purchases of precursors of methamphetamine production in the appellant's wallet. Specifically, the appellant contends that the pat down search which resulted in the discovery of the wallet and receipts "exceeded the scope of consent" and that the officers made "reckless misrepresentations of material fact" at the suppression hearing by stating that they smelled ether in the room. As a result, the appellant contends that the search warrant was "impeached" and the evidence should have been suppressed. The State contends that Officer Robbins properly examined the appellant's wallet after discovering it during a consensual pat down and that probable cause to search the motel room was justified "based on the smell of ether combined with [appellant's] obvious attempt to conceal his identity, his suspicious behavior, and the discovery of several receipts for materials used in the manufacture of methamphetamine."

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in <u>State v. Odom</u>, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." <u>Id.</u> at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" <u>State v. Carter</u>, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting <u>State v. Keith</u>, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews <u>de</u> <u>novo</u> the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. <u>See</u> <u>State v. Walton</u>, 41 S.W.3d 775, 81 (Tenn. 2001); <u>State v. Crutcher</u>, 989 S.W.2d 295, 299 (Tenn. 1999). Once the trial court has ruled on a suppression motion, our standard of appellate review requires acceptance of the trial court's findings regarding "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence," unless the evidence preponderates against the findings. <u>Odom</u>, 928 S.W.2d at 23; <u>State v. Cothran</u>, 115 S.W.3d 513, 519 (Tenn. Crim. App. 2003).

The Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures by law enforcement officers. We begin our review by observing that "under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." <u>State v. Yeargan</u>, 958 S .W.2d 626, 629 (Tenn. 1997). That is, a trial court necessarily indulges the presumption that a warrantless search or seizure is unreasonable, and the burden is on the State to demonstrate that one of the exceptions to the warrant requirement applied at the time of the search

or seizure.  Id.  Hotel and motel guests' right to privacy in their rooms is also protected by the Fourth Amendment.  State v. Ross, 49 S.W.3d 833, 840 (Tenn. 2001).

The main exceptions to the requirement for a search warrant are: (1) consent to search; (2) a search incident to a lawful arrest; (3) probable cause to search with exigent circumstances; (4) in hot pursuit; (5) a stop and frisk situation; and (6) plain view.  See State v. Bartram, 925 S.W.2d 227 (Tenn. 1996).  "If the circumstances of a challenged search and seizure come within one of the recognized exceptions, the fruits of that search and seizure are not subject to operation of the exclusionary rule and may be properly admitted into evidence."  State v. Shaw, 603 S.W.2d 741, 742-43 (Tenn. Crim. App. 1980).  "Exigent circumstances are limited to three situations: (1) when officers are in 'hot pursuit' of a fleeing suspect; (2) when the suspect presents an immediate threat to the arresting officers or the public; or (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals."  State v. Givens, No. M2001-00021-CCA-R3-CD, 2001 WL 1517033 (Tenn. Crim. App., at Nashville, Nov. 29, 2001), perm. app. denied (Tenn. May 6, 2002).  The mere existence of these circumstances does not necessarily validate a warrantless search.  The State is required to show that "the exigencies of the situation made the search imperative."  State v. Yeargan, 958 S.W.2d 626, 635 (Tenn. 1997).

It is well-established in Tennessee that the odor of an illegal substance, either alone or in conjunction with other facts and circumstances, can provide sufficient probable cause, depending on the situation, for either a warrantless search or the issuance of a search warrant.  See Hart v. State, 568 S.W.2d 295, 296 (Tenn. Crim. App. 1978) (holding that "officers' search of the vehicle was proper, based upon the independent probable cause ground of the marijuana odor" coming from the vehicle); State v. Hughes, 544 S.W.2d 99, 101 (Tenn. 1976) (holding that the odor of marijuana emanating from a vehicle constituted probable cause for a police officer to believe that the vehicle contained contraband marijuana); Hicks v. State, 534 S.W.2d 872, 873-74 (Tenn. Crim. App. 1975) (stating that "[t]he principal question presented here is whether or not the smell of marijuana emanating from the defendant's car furnished probable cause to enable an officer, who had stopped the vehicle for a traffic offense, to search the vehicle. We hold that it did."); State v. Bradley Lonsinger, No. M2003-03101-CCA-R3-CD, 2005 WL 49569 (Tenn. Crim. App., at Nashville, Jan. 5, 2005) (determining that strong "chemical smell" emanating from defendant's trailer observed while officer were serving "papers" on defendant justified issuance of search warrant); State v. Paul Anthony Wright, No. W2001-02574-CCA-R3-CD, 2003 WL 1860526, at *9-10 (Tenn. Crim. App., at Jackson, Apr. 7, 2003) (holding that a search warrant affidavit reciting, inter alia, the affiant's experience, training, and observation of both "the distinct odors associated with the manufactor [sic] of methamphetamine" and other items associated with such a manufacturing operation near the defendant's house and in his vehicle was sufficient to establish probable cause for the issuance of a search warrant of defendant's home); State v. Danny Davidson, No. W2001-00118-CCA-R3-CD, 2002 WL 1482720, at *1 (Tenn. Crim. App., at Jackson, Feb. 26, 2002) (determining that evidence was sufficient where valid search warrant of a home was issued based on an officer's recognition of a "strong chemical odor" as "that from a possible methamphetamine lab"), perm. app. denied, (Tenn. July 8, 2002).

Further, a recent federal case from the Eastern District of Tennessee upheld a warrantless search of a hotel room where the officer noticed smoke coming out of the room's window air conditioner and the "strong unmistakable odor of methamphetamine" outside the defendant's room. U.S. v. Denson, No. 1:05 CR 088, 2006 WL 270287, at *1 (E.D. Tenn. Feb. 2, 2006). In so doing, the court reviewed the requirements for a warrantless search under exigent circumstances. The court determined that probable cause existed based on the officer's "smelling the unmistakable odor of methamphetamine and his training to recognize the smell, along with visible smoke and fumes emanating from the room, and the finding of methamphetamine and coffee filters on defendant's person." Id. at *3. After determining that probable cause existed to believe that methamphetamine was illegally being processed in the defendant's room, the court went on to find that exigent circumstances existed justifying the warrantless search of the room. Id. The court commented:

> The dangers of methamphetamine are well-established. As noted by the Sixth Circuit and addressed by the House of Representatives, methamphetamine: "poses serious dangers to both human life and to the environment . . . these chemicals and substances are utilized in a manufacturing process that is unstable, volatile, and highly combustible. Even small amounts of these chemicals, when mixed improperly, can cause explosions and fires." United States v. Layne, 324 F.3d 464, 468-49 (6th Cir. 2003) (quoting H.R. Rep. 106-878, pt.1 at *22 (Sept. 21, 2000)); see also U.S. v. Dick, 173 F. Supp.2d 765, 769 (E.D. Tenn. 2001).

Id.

As stated above, our standard of review requires that the evidence preponderates against the trial court's findings of fact in this case. In the case herein, the appellant complains that the trial court erred by denying the motion to suppress because his wallet, identification, and receipts were illegally seized as a result of the pat down which exceeded the scope of his consent. However, we determine that the officers could have justified a warrantless search of the room based on the smell of methamphetamines alone without the seizure of the wallet and discovery of the receipts for precursors based on the exigent circumstances created by the dangers associated with methamphetamine production. Officers Hill and Jackson arrived on the scene after reports of the smell of "ether" coming from the appellant's room. When the appellant opened the door and squeezed himself out, the officers could smell the strong chemical smell coming from the room. The appellant told the officers they were smelling "White Castles." According to the officers, the appellant acted strange, telling them that he had come all the way from Florida with no wallet and no identification. The appellant was also unable to recite his own social security number. Based on the smell emanating from the room, Officer Hill called for a drug agent to come to the scene. When Agent Robbins arrived on the scene, he smelled "a strong smell of a chemical smell, which I believe was ether." Agent Robbins testified that he had specialized training in the detection of methamphetamine labs. The officers evacuated several hotel occupants staying in rooms near the appellant's room because they were concerned for the occupants's safety. While the officers procured a search warrant for the hotel room prior to their search which resulted in the discovery of a multitude of items used in the production of methamphetamine and some actual methamphetamine,

we conclude that they would have been justified in searching the room without a warrant based on the dangerous exigent circumstances presented by an active methamphetamine laboratory. Had the officers searched the room without a warrant, the appellant would have been taken into custody and his wallet seized, whereby the officers would have eventually discovered the appellant's true identity and the receipts for the purchase of the precursors. The fact that his wallet was discovered prior to the search of the room during a pat down is, we conclude, inconsequential. The evidence does not preponderate against the decision of the trial court to deny the motion to suppress. This issue is without merit.

## Sufficiency of the Evidence

Next, the appellant complains that the evidence was insufficient to convict him of manufacturing methamphetamine. Specifically, the appellant contends that "the proof showed that [the appellant] lacked two products required to produce methamphetamine from ephedrine/pseudoephedrine." The appellant argues that because he was not in possession of anhydrous ammonia or lithium, he was incapable of manufacturing methamphetamine. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

The appellant was convicted of manufacturing a Schedule II controlled substance in violation of Tennessee Code Annotated section 39-17- 417(a)(1), which states that it is a crime for a person knowingly to manufacture a controlled substance. As provided by Tennessee Code Annotated section 39-17-408(d)(2) (2003), methamphetamine is a Schedule II controlled substance. "Manufacture" is defined as the "production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or

repackaging of the substance or labeling or relabeling of its container, except that 'manufacture' does not include the preparation or compounding of a controlled substance by an individual for the individual's own use . . . ." Tenn. Code Ann. § 39-17-402(14).

The appellant cites State v. David Long, No. W2003-02522-CCA-R3-CD, 2005 WL 525267 (Tenn. Crim. App., at Jackson, Mar. 4, 2005), to support his argument. In Long, the defendant was stopped by police while driving a "Sperry Rail Service" truck containing various chemicals and materials used in the production of methamphetamine. This Court reversed and dismissed the defendant's conviction, determining that:

> The facts relevant to manufacturing establish that the Appellant as in possession of a large quantity of cold remedy medications containing pseudoephedrine, three cans of starting fluid, recipes for manufacturing methamphetamine, phosphorous matches, and a small quantity of methamphetamine. The Appellant asserts that there was no evidence whatsoever that he had begun the process of manufacturing. He concedes that while he "may have fully intended to manufacture a controlled substance at some future date," he was not manufacturing when arrested.
>
> . . . .
>
> The conduct prohibited by the statute is that of "manufacturing." From the facts before us, we cannot conclude that the Appellant did more than possess some, but not all, of the ingredients necessary for the manufacture of methamphetamine. Possession is not equivalent to manufacturing.

Id. at *6. The panel of this Court went on to note that there was "no proof" which "remotely suggests" that the appellant was "propagating" any controlled substance. The arresting officer admitted that he did not smell ether or ammonia at the scene or see any lab equipment utilized in the manufacturing of methamphetamine. Further, none of the cold medicines had even been removed from the blister packs or boxes in which they had been purchased. Id. Long is clearly distinguishable from the case herein. The appellant herein not only had supplies and ingredients necessary for the production of methamphetamines, but the precursor medications from which the methamphetamines would ultimately be produced had been broken down and were soaking in a solvent in preparation for the next step in production. The smell of ether was detected by all of the officers on the scene and two jars of a clear substance later identified as liquid ephedrine were discovered in the room. A small quantity of methamphetamine was also recovered from the hotel room. Moreover, the appellant himself candidly explained the process of methamphetamine production and outlined the actions he had taken to manufacture methamphetamine. Specifically, the appellant testified that he had used a coffee grinder to grind the over-the-counter medications into a powder and admitted that he had begun the process of ephedrine extraction by soaking the ground medications in a solvent. From the testimony of the officers and the testimony of the appellant himself, it is clear a reasonable jury could have concluded that the appellant was at least engaged in the "preparation" "of a controlled substance." See Tenn. Code Ann. § 39-17-402(14). Accordingly,

the evidence was sufficient to convict the appellant of manufacturing methamphetamine. This issue is without merit.

Sentencing

A. Multiple Offender Status

Next, the appellant claims that the trial court improperly sentenced him as a multiple offender. Specifically, the appellant argues that the State failed to prove beyond a reasonable doubt that the convictions for manufacturing methamphetamine and fleeing or evading police from Kentucky would have been punishable in Tennessee as felonies. Therefore, the appellant argues, the trial court was prohibited from considering those convictions for purposes of classification of the appellant's sentencing range. The State disagrees.

At the sentencing hearing, the trial court considered certified judgments from Christian County, Kentucky, as evidence that the appellant had prior felony convictions necessary to justify his classification as a Range II multiple offender. The State argued that the felony offenses of manufacturing methamphetamine and first degree fleeing or evading police both constituted felonies under Tennessee law to justify Range II classification. The State also argued that the appellant's conviction for first degree criminal mischief constituted a felony conviction. The trial court agreed and determined that the appellant had three prior felonies, justifying his classification as a Range II offender.

Under Tennessee Code Annotated section 40-35-106(a), a multiple offender is defined as "a defendant who has received: (1) A minimum of two (2) but no more than four (4) prior convictions within the conviction class, a higher class, or within the next two (2) lower felony classes . . . ." Convictions for multiple felonies committed within twenty-four hours of each other and as part of a single course of conduct constitute one conviction for the purpose of determining prior convictions. Tenn. Code Ann. § 40-35-106(b)(4). However, convictions involving acts that result in bodily injury or threatened bodily injury to the victim are excluded from this rule. Tenn. Code Ann. § 40-35-106(b)(4). Furthermore, prior convictions:

> [I]nclude convictions under the laws of any other state, government, or country which, if committed in this state, would have constituted an offense cognizable by the laws of this state. In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used by the Tennessee court to determine what classification the offense is given.

Tenn. Code Ann. § 40-35-106(b)(5). Submission of certified copies of the defendant's prior convictions is prima facie evidence of the defendant's prior felony record. See Tenn. Code Ann. § 40-35-202(a). Thus, the elements of the out-of-state convictions, as set forth in the governing jurisdiction's statute, determine the classification for the prior felony offense, see State v. Duffel,

-12-

631 S.W.2d 445 (Tenn. Crim. App. 1981), and the law at the time of the offense controls this determination, see State v. Brooks, 968 S.W.2d 312, 313 (Tenn. Crim. App. 1997).

Thus, in order to properly classify these out-of-state convictions, we must compare the applicable Kentucky statutes defining the offenses with corresponding Tennessee statutes. At the outset, we note that when the certified judgments from Kentucky were introduced by the State they were examined by the trial judge who commented that the convictions for manufacturing methamphetamine and fleeing or evading appeared to be felony convictions. Counsel for the appellant agreed, stating, "They are both, in my opinion, felonies under Tennessee law." There was no further discussion on the application of the manufacturing methamphetamine conviction after the acquiescence by counsel for the appellant. According to Tennessee Rule of Appellate Procedure 36(a), this Court is not obliged to grant relief to "a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." The appellant failed to object to the usage of the convictions for determination of the appellant's range. Thus, this issue is waived.

Regardless of the waiver, at least two of the appellant's prior convictions could be classified as felonies in Tennessee for sentencing purposes which would justify the appellant's Range II status. The appellant was convicted in Kentucky of first degree fleeing from or evading police. Kentucky Revised Statute section 520.095(1)(a) makes it a Class D felony offense for an operator of a motor vehicle to elude or flee from a police officer having directed the operator to stop when the person is fleeing: (1) after having committed an act of domestic violence; (2) while driving under the influence of alcohol of other enumerated substances; (3) while driving with a suspended license; or (4) creates substantial risk or is cause of serious physical injury or death to any person or property. Ky. Rev. Stat. Ann. § 520.095(1)(a)(2005). Likewise, under Tennessee Code Annotated section 39-16-603(b)(1), it is a felony offense for a motor vehicle operator on any street, road, alley, or highway, to intentionally flee from a law enforcement officer after having received any signal from such officer to stop. Clearly, the appellant's violation of the Kentucky statute would constitute a felony offense under Tennessee Code Annotated section 39-16-603(b)(1) as the elements of the two crimes are substantially similar.[1] Moreover, the appellant concedes that "the only Kentucky felony proven by the State to be a felony for range purposes beyond reasonable doubt is the first degree criminal mischief conviction." Utilizing the felony convictions for first degree criminal mischief and first

---

[1]The appellant suggests on appeal that he could have been charged in Kentucky for fleeing or evading on foot rather than in a motor vehicle and that a conviction under that section would not amount to a felony conviction in Tennessee. While the record does not specify that the appellant was convicted under subsection (a) of section 520.095, a careful examination of the record and the "Judgment and Sentence on Plea of Guilty" reveal that the various crimes for which the appellant pled guilty included operating a motor vehicle under the influence of a controlled substance, operating a vehicle on a suspended license and failure to wear a seat belt, among other things. Thus, the record indicates that the appellant was fleeing from the authorities in Kentucky in a motor vehicle, rather than on foot.

degree fleeing or evading police, the trial court was justified in sentencing the appellant as a Range II offender under Tennessee Code Annotated section 40-35-106(a)(1).[2]

Consecutive Sentencing

Lastly, the appellant complains that the trial court erred in imposing consecutive sentencing. Specifically, the appellant argues that the trial court "failed to consider all of the factors it should have before ordering that the sentences herein be served consecutively to the unserved Kentucky sentence" because the trial court did not apply the Wilkerson factors as found in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995). The State contends that the appellant's "extensive criminal history, considered with his probationary status at the time of his criminal acts, justify the trial court's imposition of consecutive sentencing even without consideration of [the appellant's] professional status or lack thereof."

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

The appellant herein was convicted of manufacturing methamphetamine, possession of methamphetamine with the intent to deliver and criminal impersonation. Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one (1) offense, the trial court shall order the sentence to run either consecutively or concurrently. The trial court may order the sentences to run consecutively if the trial court finds by a preponderance of the evidence that certain criteria enumerated in Tennessee Code Annotated section 40-35-115(b) are present. Those factors include the following:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

---

[2]The appellant also argues that his convictions for manufacturing methamphetamine and fleeing or evading police should be considered a single offense and thus constitute one conviction for purposes of determining prior convictions for sentencing purposes because the two crimes have the same date of offense on the judgment form. Because we have determined that the appellant had the requisite number of prior felony offenses to justify sentencing as a Range II offender without utilizing the conviction for manufacturing methamphetamine, this issue is moot.

(3) The defendant is a dangerous mentally abnormal person . . . ;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor . . . ;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). The decision to impose concurrent or consecutive sentences, however, is a matter entrusted to the sound discretion of the trial court. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997).

In the case herein the trial court determined that consecutive sentencing was warranted, making the following comments:

> Now, under 40-35-115, the Court is required to find by preponderance of the evidence, that the Defendant is a professional criminal who has devoted such defendant's life to criminal acts as a major source of livelihood. Based on this testimony in Court, he had done this about fifty times and manufacdturing [sic] amphetamines [sic] and the Court might find that and based on his criminal history. However, sub-section 2 is much more demanding in my opinion; that is, he has a record of criminal activity, which goes far and beyond being extensive. And then we turn the page, number six, the Defendant is sentenced for an offense while on probation. So the - - do believe that this is a sentence that should be consecutive to the Kentucky conviction.

Thus, the trial court relied on sections (1), ( 2), and (6) of Tennessee Code Annotated section 40-35-115 to justify the imposition of consecutive sentencing.

The appellant contends on appeal that the trial court had insufficient justification to support the finding that he was a professional criminal. The State concedes that the record offers little evidence that the appellant made any income from his criminal activity, but points to the fact that the appellant had a conviction for trafficking marijuana and admitted during his testimony that he had manufactured methamphetamine on approximately fifty occasions. We agree with the appellant that the record does not support the trial court's determination that the appellant was a professional criminal. However, there is ample proof in the record that the appellant had an extensive criminal history and committed the present offenses while on probation in Kentucky. In addition to the offenses of manufacturing methamphetamine, felony evading arrest and first degree criminal mischief considered by the trial court for purposes of sentencing range classification, the record reveals that the appellant had a total of twenty additional prior convictions: eleven convictions for traffic offenses, six convictions for drug offenses, two convictions for assault and one conviction for underage possession and transportation of beer. Further, the appellant does not challenge the trial

-15-

court's determination that he was on probation at the time he committed the offenses herein. We conclude that the trial court properly ordered the appellant's sentence to be served consecutively to his Kentucky sentence.

Lastly, the appellant argues that the trial court erred by not applying the Wilkerson factors in determining whether to impose consecutive sentencing. With regard to the claims that the terms of the appellant's sentence do not reasonably relate to the severity of the offenses and that consecutive sentences were not necessary to protect the public from further serious criminal conduct, see State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn.1995), the Tennessee Supreme Court has held that the Wilkerson factors are limited to cases involving defendants found to be "dangerous offenders" under Tennessee Code Annotated section 40-35-115(b)(4). State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). The trial court herein did not find the appellant to be a "dangerous offender." Thus, this claim is without merit.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-16-